UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HEARTS ON FIRE COMPANY, LLC, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>EIGHTSTAR DIAMOND COMPANY, )<br>)<br>Defendant. ) | Civil Action No. 04 12258-JLT |

# DEFENDANT EIGHTSTAR DIAMOND COMPANY'S
# MEMORANDUM IN OPPOSITION TO
# PLAINTIFF'S MOTION TO DISMISS

Defendant EightStar Diamond Company ("EightStar") asks that this Court deny plaintiff's Motion to Dismiss in all respects for the reasons set forth herein. This Court has clear subject matter jurisdiction over EightStar's counterclaim for declaratory judgment of nonregistrability. Plaintiff's ("HOF's") argument that the Court is without power to grant the relief EightStar's counterclaims seek because this action involves unregistered marks is without merit (and disingenuous), since two of HOF's claimed "Perfect Diamond" trade and service marks have registered on the Supplemental Register of Trademarks. Those registrations place this case squarely within the grant of jurisdiction contained in 15 U.S.C. § 1119. Moreover, regardless of the registration status of HOF's marks, this Court has subject matter jurisdiction under section 1121 of the Trademark Act to determine everything HOF has placed at issue in this action, including the validity of HOF's marks.

HOF's argument that EightStar's counterclaim seeking a declaration of noninfringement should be dismissed for lack of a "justiciable controversy" is grounded in a misunderstanding of

-1-

the test applicable to determining whether an "actual controversy" exists in trademark proceedings. Here, where the competitive market's right to describe jewelry as *perfectly cut* is the subject of HOF's complaint and the rights of free speech in the marketplace hinge on this Court's findings, the liberal test applicable to the "case or controversy" requirement in trademark litigation (imminent intent to use an infringing designation and reasonable apprehension of litigation for doing so) is amply satisfied. For all of the reasons set forth herein, this Court should not countenance HOF's effort to base its entire complaint on EightStar's "bad acts" and then be permitted to argue that EightStar's counterclaims fail because it has not admitted to any bad acts.

If EightStar's counterclaims are dismissed from this action, to prevent HOF from gaining the benefits of registration on the Principal Register[1], EightStar would be required to commence an opposition proceeding in the Trademark Trial and Appeal Board.[2] Because 15 U.S.C. §§ 1119 and 1121 give this Court jurisdiction to determine the issues of registrability and because it would be duplicative and vexatious for these same parties to present the *same* evidence, *same* facts, and *same* arguments regarding the validity of the Perfect Diamond Marks in two separate proceedings, this Court should deny HOF's Motion to Dismiss.

---

[1] There are numerous benefits of registration of a mark that are not available at common law including: (1) constructive notice of the registrant's claim of ownership of the trademark; (2) prima facie evidence of the validity of the registration, of the registrant's ownership of the mark, and of his exclusive right to use the mark in commerce as specified in the certificate; (3) the possibility that, after five years, registration will become incontestable and constitute conclusive evidence of the registrant's right to use the mark; (4) the right to request customs officials to bar importation of goods bearing infringing trademarks; (5) the right to institute trademark actions in federal courts without regard to diversity of citizenship or the amount in controversy, and (6) treble damage actions against infringing trademarks and other remedies. See Brittingham v. Jenkins, 914 F.2d 447, 452 (4th Cir. 1990); 15 U.S.C. § 1115.

[2] See § 1063. Opposition to registration (a) Any person who believed that he would be damaged by the registration of a mark upon the principal register, including as a result of dilution under section 43(c) [15 U.S.C. §1125(c)], may, upon payment of the prescribed fee, file a notice of opposition in the Patent and Trademark Office, stating the grounds therefor, within thirty days after the publication under subsection (a) of section 12 of this Act [15 U.S.C. §1062] of the mark sought to be registered.

## I. EVIDENCE RELIED ON

EightStar relies on the Exhibits hereto and pleadings and files herein.

## II. FACTS

### A. Procedural History

On October 26, 2004, HOF filed this lawsuit against EightStar alleging claims for Unfair Competition under 15 U.S.C. § 1125(a) and common law, and for Unfair and Deceptive Acts and Practices under Mass. Gen. Laws ch. 93A. HOF's claims are grounded on the allegations that EightStar "instigated and directed" its retailers to advertise EightStar diamonds using slogans similar to two phrases in which plaintiff claims common law "trademark rights":

THE WORLD'S MOST PERFECTLY CUT DIAMOND; and

THE MOST PERFECTLY CUT DIAMOND IN THE WORLD,

See Complaint, ¶27 (the "Perfect Diamond Marks").

In fact, EightStar, knowing that HOF had threatened to sue its retailers and wishing to avoid costly litigation with a much larger competitor, *discouraged* its retailers from provoking an HOF trademark suit. Thus, and notwithstanding that it believed that HOF should not be permitted to register or claim exclusive rights to use the Perfect Diamond Marks, EightStar asked its retailers to avoid or cease expressing their personal beliefs that EightStar, not HOF, makes *"the most perfectly cut diamonds in the world."* On this basis EightStar has denied most of the allegations of the complaint. See Answer to Complaint. The relevant procedural background is as follows:

1. The Northern California Litigation.

In Spring 2004 HOF initiated litigation against an EightStar retailer in EightStar's home jurisdiction of Northern California, settling only when it obtained that small retail jewelry company's permanent agreement to cease use of the Perfect Diamond Marks. See Declaration of Dana von Sternberg, ¶22 (filed with EightStar's Motion to Change Venue)

-3-

2.  Pending Motions to Transfer Venue and Add Parties.

HOF has demonstrated its ability to sue concerning this case's subject matter in California and the cost of fully litigating this matter in Massachusetts may be beyond EightStar's means. Therefore, EightStar has moved to transfer venue pursuant to 28 U.S.C. § 1404 (a).[3] HOF's motion to add another EightStar retailer to the case, GRS Jewelers, Inc. d/b/a Grimball Jewelers ("Grimball") is pending. EightStar has opposed that motion on grounds that Grimball is not subject to the personal jurisdiction of the Massachusetts courts.

3.  EightStar's Counterclaims and HOF's Motion to Dismiss.

EightStar has counterclaimed asking this Court to declare HOF's marks unenforceable, invalid and unregistrable as source-identifying federal trademarks. It also seeks an early declaration that any instance in which retailers advertised EightStar's diamonds to be *"the most perfectly cut"* was not only non-infringing but also a fair, accurate descriptive use of unactionable puffery. HOF now moves this Court to dismiss the counterclaims. It argues that, because its complaint alleges infringement of *unregistered marks,* the Court lacks jurisdiction to grant the relief EightStar seeks. Because EightStar is entitled to the relief sought by its counterclaims, HOF's motion should be denied.

B. **Background Facts**

On September 18, 2002, two of HOF's marks at issue in this case registered on the PTO's Supplemental Register:

> THE MOST PERFECTLY CUT DIAMOND IN THE WORLD, application no. 78/078,313; and

---

[3] Reserving its right to seek dismissal of the case pursuant to FRCP 12(b)(2) for lack of personal jurisdiction over EightStar, whose contacts with Massachusetts, like Grimball's, are minimal. See Motion to Amend, p. 6; see also EightStar's Answer to Complaint, Affirmative Defense No. 3.

>THE WORLD'S MOST PERFECTLY CUT DIAMOND, application no. 78/078,312.

See Exhibit 1, which consists of true and correct copies of the electronic records of the PTO as of January 24, 2005, indicating registration on the Supplemental Register. HOF is presently seeking registration of these marks and the three others on the U.S. Patent and Trademark Office ("PTO's") Principal Register:

>THE MOST PERFECTLY CUT DIAMOND IN THE WORLD application no. 78/078,314; and
>
>THE WORLD'S MOST PERFECTLY CUT DIAMOND application nos. 78/078,235 and 78/078,237, covering both *goods* and *services*,

See Exhibit 2, which consists of true and correct copies of the electronic records of the PTO as of January 24, 2005. HOF seeks dismissal of EightStar's counterclaims precisely at a time when the two federal applications HOF pled in its complaint have been approved to register by the PTO.[4]  See Exhibit 1.

While HOF's claims are not explicitly made on the basis of its *registered* marks, the dispute between these parties involves *registered* marks and calls into question the validity and registrability of these marks. See Complaint, ¶¶ 17, 19. HOF itself puts the impending registration (on the Principal Register) of the Perfect Diamond Marks at issue when it relies upon its applications and their progress in the PTO to make presumptions of distinctiveness. HOF

---

[4]The PTO will therefore, pursuant to 15 U.S.C. 1062, imminently publish the two HOF applications to register the Perfect Diamond Marks for opposition The statute reads, in relevant part: (a) Examination and publication. Upon the filing of an application for registration and payment of the prescribed fee, the Director shall refer the application to the examiner in charge of the registration of marks, who shall cause an examination to be made and, if on such examination it shall appear that the applicant is entitled to registration, or would be entitled to registration upon the acceptance of the statement of use required by section 1(d) of this Act [15 U.S.C. §1051(d)], the Director shall cause the mark to be published in the Official Gazette of the Patent and Trademark Office; Provided, That in the case of an applicant claiming concurrent use, or in the case of an application to be placed in an interference as provided in section 16 of this Act [15 U.S.C. §1066], the mark if otherwise registrable, may be published subject to the determination of the rights of the parties to such proceedings.

states in Paragraph 19 of its Complaint, "In recognition of the distinctiveness of HOF's trademarks and service marks, the USPTO's examining attorneys approved each of the applications identified in paragraph 17 for publication on the Official Gazette in order for such marks to be registered."

### III. ARGUMENT AND AUTHORITY

A. **The Court Has Subject Matter Jurisdiction Over EightStar's First Counterclaim for Declaratory Judgment of Nonregistrability**

    1.    Two of HOF'S Perfect Diamond Marks Have Registered Giving This Court Jurisdiction Under 15 U.S.C. § 1119.

15 U.S.C. § 119, Power of court over registration, states in part,

> In any action involving a *registered mark* the court may determine the right to registration, order the cancellation of registration, in whole or in part, restore canceled registrations, and otherwise rectify the register with respect to the registrations of any party the action. . . .

HOF argues that this statute restricts this Court's power over registration in actions involving *unregistered marks*. 15 U.S.C. § 1127, Construction and definitions; intent of chapter, defines the term *"registered mark"* as:

> a mark registered in the United States Patent and Trademark office under this chapter. . . .

Both the Principal and Supplemental Registers are provided for "under this chapter" (i.e. Chapter 22 of Title 15). The Principal Register is covered by sections 1051 to 1072 and the Supplemental Register is covered by sections 1091 to 1096. See 15 U.S.C. § 1127. Thus it follows that, under 15 U.S.C. § 1119, a mark registered either on the Supplemental or Principal Register empowers the Court to determine the right to registration.

On September 18, 2002, two of HOF's marks at issue in this case *registered* on the PTO's Supplemental Register:

> THE MOST PERFECTLY CUT DIAMOND IN THE WORLD, application no. 78/078,313; and

THE WORLD'S MOST PERFECTLY CUT DIAMOND, application no. 78/078,312.

See Exhibit 1.

Under 15 U.S.C. § 1119, HOF's *registered marks* (which it failed to reveal to this Court in its Motion to Dismiss) give this court subject matter jurisdiction over registration and accordingly, HOF's Motion to Dismiss should be denied.

    a.    *Under 15 U.S.C. § 1119, Courts are authorized to determine the registrability of unregistered marks when a registered mark is involved in the action.*

There is ample case law that Section 1119 of the Trademark Act authorizes federal courts to determine the registrability of an *unregistered* mark in an action in which a *registered* mark is involved. See Tillamook Country Smoker v. Tillamook County Creamery, Assoc., 333 F. Supp. 2d 975, 980 (Or. 2004) (court interpreted 15 U.S.C. § 1119 to mean that courts may order registration of an unregistered mark); see also Durox Company v. Duron Paint Manufacturing Co., 320 F.2d 882 (4th Cir. 1963) (defendant's trademark registration was involved and thus the court applied the rationale of 15 U.S.C. § 1119 to provide jurisdiction over plaintiff's unregistered mark); (Avon Shoe Co. v. David Crystal, Inc., 279 F.2d 607, 614-15 (2d Cir. 1960); Massa v. Jiffy Products Co., 240 F.2d 702, 707 (9th Cir. 1957) (relief was founded upon 15 U.S.C. § 1119, which permits a court in any action "involving a registered mark" to "rectify the register with respect to the registrations of any party to the action"); Guardian Life Insurance Company of America v. American Guardian Life Assurance Co., No. 95-3997 1995 WL 723186, 37 U.S.P.Q.2d 1847 (E.D. Pa. Nov. 14, 1995); Continental Connector Corp. v. Continental Specialties Corp., 413 F. Supp. 1347, 1348-49 (D. Conn. 1976). Under this line of cases, the Court has the power to determine the registrability over the *registered* and *unregistered* Perfect Diamond Marks in this action.

      b.    *Equitable considerations also weigh in favor of the Court's having jurisdiction over HOF's unregistered marks*

EightStar's claims for declaratory relief not only seek to have HOF's registrations stricken from the register, as 15 U.S.C. § 1119 expressly permits, they also seek this Court's early determination that the Perfect Diamond Marks are not registrable on the Principal Register. EightStar is entitled to the relief it seeks. At a minimum, this Court has the right to (and will) make determinations of validity of the marks. Nothing in the case law cited by HOF disallows a Court from making subsidiary determinations of the validity or enforceability of marks it is already analyzing in connection with other claims.

Based on the electronic records of the PTO, it can be surmised that the HOF applications were approved to register *only* based on HOF's own testimony that the marks had acquired distinctiveness. EightStar expects, during this litigation, to prove that the Perfect Diamond Marks cannot acquire distinctiveness as source-identifying trademarks. Since, for purposes of a motion to dismiss, all allegations in a counterclaim must be taken as true, and since EightStar has plead facts which would render HOF's applications unregistrable, EightStar is entitled to this Court's determination of HOF's right to Principal Registration for the Perfect Diamond Marks.

Under HOF's analysis of the Lanham Act, this Court would have no power to order or limit the registration of an unregistered mark, and its power to directly alter the Register of Trademarks would be limited. Nothing in the cases cited by HOF, however, suggest that this Court is without power to prevent HOF from obtaining legal benefits from a trademark registration to which it is not entitled. This Court has the power, under 15 U.S.C. § 1121 (as further set forth below), to issue, at the least, an order directing the PTO to stay publication of the HOF applications pending this Court's determination of HOF's right to register the marks and the power to enter a final order that these marks are not registrable.

The Court in <u>Durox</u> explained the rationale behind the extension of jurisdiction over *unregistered* marks, where a *registered* mark is involved:

> Congress has provided that all questions in respect to a registered trademark may be determined in one proceeding, thus preventing vexatious and harassing litigation as well as saving time, expense and inconvenience to the parties and to the courts and Patent Office tribunals.

<u>Durox Company v. Duron Paint Manufacturing Co.</u>, 320 F.2d 882, 886 (4th Cir. 1963) (*citing* <u>Simmonds Aerocessories, Ltd. v. Elastic Stop Nut Corp.</u>, 257 F.2d 485 (CCA-3, 1953)).

While HOF, a self-proclaimed "leader in the distribution of branded diamonds" may be able to afford litigating identical claims in discrete tribunals, EightStar cannot. Yet if EightStar's counterclaims are dismissed, proceeding in a separate and totally duplicative action at the TTAB will be EightStar's only option. This would require EightStar to request a stay of this litigation to prevent two separate outcomes on the issue of validity of the Perfect Diamond Marks (i.e. this Court holds that the Perfect Diamond Marks are generic and invalid and TTAB finds them distinct and registrable).

A stay, however, would only serve to unnecessarily prolong the uncertainties that exist between these parties, increase the expense, and frustrate free speech (i.e., the diamond industry's ability to refer to their diamonds as *the most perfectly cut* if that is their belief). EightStar (and HOF) should not be forced through two separate proceedings, but rather are entitled to a prompt resolution of all issues in one proceeding. See <u>Goya Foods, Inc. v. Tropicana Products, Inc.</u>, 846 F.2d 848, 854 (2nd Cir. 1988) ("[w]hether a litigant is seeking to halt an alleged infringement or . . . a declaration of non-infringement, it is entitled to have the infringement issue resolved promptly so that it may conduct its business affairs in accordance with the court's determination of its rights. Delaying consideration of [a party's] claim pending the outcome of TTAB proceedings undercuts the purpose of declaratory relief by forcing [the party] either to abandon use of trademarks . . . or to "persist in piling up potential damages.");

see also W & G Tennessee Imports v. Esselte Pendaflex, 769 F. Supp. 264, 266 (M.D. Tenn. 1991) (finding there should be only one proceeding on the grounds that if validity were to be decided by the PTO and then infringement was to be decided by this Court, the parties would be subjected to the unnecessary expense and delay of two separate proceedings). The efficient approach is for this Court to resolve all issues of validity, registrability, and unfair competition in one proceeding.

This Court has both the statutory power and the equitable incentive to avoid duplicative litigation and determine the registrability over the *unregistered* marks in this action. Because each of the two Perfect Diamond Mark phrases have been registered with the PTO, HOF cannot argue that the unregistered marks (which are identical to the registered marks) are in any way unrelated to this case. This Court has the power to hear issues of registrability regarding all five marks and accordingly should deny Plaintiff's Motion to Dismiss.

2. This Court has Subject Matter Jurisdiction over EightStar's Nonregistrability Counterclaim Under 15 U.S.C. § 1121.

Even if this Court finds that a *registered* mark under 15 U.S.C. § 1119 is limited to marks registered on the Principal Register, this Court would still, pursuant to 15 U.S.C. § 1121, have subject matter jurisdiction over claims "arising under" federal trademark laws. EightStar's counterclaim for nonregistrability clearly arises under the registration statutes as the claim will either be sustained or defeated depending on the application of those statutes. See Continental Connector Corporation v. Continental Specialties Corporation, 413 F. Supp. 1347 (D. Conn. 1976).

In Continental Connector Corp., a nearly identical case to the case at hand, the defendant brought a counterclaim seeking an order from the court directing the PTO to deny registration of plaintiffs unregistered common law trademark (for which an application and opposition proceeding was pending in the TTAB). Plaintiffs moved to dismiss the counterclaim for lack of

subject matter jurisdiction. The court found that it had original jurisdiction under the Lanham Act, 15 U.S.C. § 1121, to entertain defendant's declaratory judgment counterclaim to deny registration to a pending trademark application.

The court noted two obstacles to the exercise of jurisdiction were subject matter jurisdiction were grounded solely on 15 U.S.C. § 1121. First, the court noted that Merrick v. Sharp & Dohme, Inc., 185 F.2d 713 (7th Cir. 1950) held that an opposition to an application for registration, *in the absence of a claim of infringement*, did not place the parties in an adversary position or present an actual controversy so as to justify a declaratory judgment.

The Continental Connector Corp court quickly overcame this obstacle by explaining that while, under Merrick, a person who files a notice of opposition does not become involved in private litigation with the applicant, "lack of adversity and a 'controversy' in the article III sense cannot be missing because a court can, as in Massa, rule that a contestant is entitled to registration of a mark." Id. at 1349. As stated previously, in Massa, the court held that it had original jurisdiction to order registration of an unregistered mark. See Massa v. Jiffy Products, Co. 240 F.2d 702 (9th Cir. 1957).

The second obstacle, and according to Continental Connector Corp. the obstacle which "really explains the Merrick result," is that the PTO is entitled to determine registrability of trademarks. The court noted that "[g]enerally, a court defers to the exercise of an administrative agency's primary jurisdiction to have the benefit of the agency's expertise in the assessment of disputed facts that are not open for reconsideration by the court. Id. at 1350, *citing* Federal Maritime Bd. v. Isbrandtsen Co., 356 U.S. 481, 498 (1958); Far East Conference v. United States, 342 U.S. 570, 574-75, (1952). The Continental Connector Corp. court noted that this generalization is not necessarily true in a trademark proceeding, where, the PTO's decision could be litigated virtually *de novo* (since additional cross-examination and presentation of additional

testimony is permitted) pursuant to 15 U.S.C. § 1071(b). Id. The court recognizing the desirability of adhering to the statutory scheme of permitting an administrative agency initial consideration, found the rule yielding in the right factual situation. The Court stated that:

> Interests of judicial economy are best served by eschewing the primary jurisdiction objection in cases, such as this one, where facts concerning the disputed registration are going to be litigated in connection with other claims properly within this Court's jurisdiction.

Id.

The same logic applies in this case. To adjudicate HOF's claims of unfair competition and unfair and deceptive acts, the Court will need to evaluate the validity and enforceability of HOF's common law trademarks. The exact same facts, evidence, and arguments that must be heard in this case to determine HOF's claims (and EightStar's defenses) would be determinative of an opposition proceeding before the TTAB. The interests of judicial economy and expense to the parties are best served by limiting the litigation of these claims in a single forum. The Court has the power to hear the issue of the registrability of all five HOF Perfect Diamond Marks, which will necessarily be litigated in connection with other Lanham act claims within this Court's jurisdiction. For all of the foregoing reasons, the Court should deny HOF's Motion to Dismiss EightStar's counterclaims.

**B.    EightStar Has Adequately Plead its First and Second Counterclaims for Declaratory Judgment of Noninfringement**

Actual use of a mark is not the proper test to determine if there is an "actual controversy" under the federal Declaratory Judgment laws. Instead, the applicable test to determine whether an "actual controversy" exists is the "imminent intention and ability test." This test states that an actual case or controversy exists where a party has engaged in a course of conduct evidencing a "definite intent and apparent ability to commence use" of the marks on the product. See Starter Corp. v. Converse, Inc., 84 F.3d 592 (2nd Cir. 1996); see also Banff, Ltd. v. Federated Dept.

Stores, Inc., 657 F. Supp. 336, 339 (S.D.N.Y. 1987) (applying the "immediate intention and ability" test to ascertain justiciability in trademark dispute).

EightStar denies that it ever used the Perfect Diamond Marks in its advertising and marketing. It has objected to HOF's allegation that it "instigated and directed" others to use the Perfect Diamond mark for legal vagueness. It is obvious that, since it is charged with unfair use – and essentially, infringement of an "unregistered" trademark, EightStar must answer allegations of its own use of the Perfect Diamond Marks accurately and cautiously. This Court cannot allow HOF to base its entire complaint on EightStar's unfair use of the Perfect Diamond Marks and then countenance its effort to dismiss EightStar's claims on the basis that EightStar has not alleged use of "its" marks.

EightStar is asking this Court to hear its declaratory judgment action to resolve a controversy, which clearly centers on HOF's alleging infringement of its marks. In such cases, courts determine an "actual controversy" with some liberality. See Larami Corp. v. Amron, 1994 WL 369251, *4 (S.D.N.Y., Jul. 13, 1994) (finding of an actual controversy should be determined with some liberality in trademark declaratory judgment actions); see also Manufacturers Hanover Corp. v. Maine Sav. Bank, 225 U.S.P.Q. 525, 526 (S.D.N.Y. 1985) (extending liberal interpretation of Declaratory Act's "actual case or controversy" requirement from patent infringement to trademark disputes); 6A J. Moore, Moore's Federal Practice Section(s) 57.20 at 57-222, 57-223 (citations omitted).

For the foregoing reasons, this Court must find that EightStar has adequately plead its claim for a declaratory judgment of noninfringement and deny HOF's Motion to Dismiss.

**C.    Reservation of Rights to Amend**

The federal rules follow the policy of deciding cases on the merits rather than on technicalities, which means that EightStar must be given every opportunity to cure any perceived

defects, and that the normal procedure is to order amendment, rather than dismissal. <u>Guerrero v. Gates</u>, 110 F. Supp. 2d 1287, 1290 (D.C. Cal. 2000). To the extent the court believes there is any merit in plaintiff's motion, EightStar requests leave to amend. If the court orders dismissal, rather than leave to amend, the court must articulate the reasons for dismissing the counterclaims. <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962).

### IV. <u>CONCLUSION</u>

HOF brought this Motion to Dismiss apparently to force EightStar to defend itself in a federal court proceeding while also trying the same issue – the registrability of the Perfect Diamond Marks – before the TTAB. This Court has the statutory power to hear this case and for the sake of judicial efficiency, expense, and delay to the parties, should act to prevent the harm to EightStar that will result if the issues in this case proceed before two separate tribunals. Accordingly, this Court should deny HOF's Motion to Dismiss.

EIGHTSTAR DIAMOND COMPANY

By its attorneys,

MILLER NASH LLP

\_\_\_/s/ Adele Conover_____
Adele Conover
Miller Nash LLP
601 Union Street
Seattle, WA 98101-2352
(206) 622-8484

Attorneys for Defendant
EightStar Diamond Company
Admitted *Pro Hac Vice*

Dated:  January 24, 2005