UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

HEARTS ON FIRE COMPANY, LLC,

Plaintiff,

v.

CIVIL ACTION NO. 04-12258-JLT

EIGHTSTAR DIAMOND COMPANY,

Defendant.

### AFFIDAVIT OF GAILYC C. SONIA IN SUPPORT OF PLAINTIFF HEARTS ON FIRE COMPANY'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS COUNTERCLAIMS

I, Gailyc C. Sonia, do on oath depose and say:

1.    I am over the age of majority, of sound mind, and I give this testimony based on my personal knowledge of the facts stated herein.

2.    I am employed as in-house counsel for Plaintiff Hearts On Fire Company, LLC (hereinafter "HOF") and previously represented HOF as outside counsel in connection with trademark matters.

3.    In this action, HOF has brought suit to enforce rights in two marks:  THE WORLD'S MOST PERFECTLY CUT DIAMOND and THE MOST PERFECTLY CUT DIAMOND IN THE WORLD.  Although these two marks are the subject of five separate applications for registration as trademarks and service marks with the United States Patent and Trademark Office ("PTO"), no valid registration yet exists covering either of these marks and none of the five applications has matured into a valid final registration.

This is not because the applications have been rejected by the PTO but, rather, because they have simply not yet proceeded to final registration.

4.      I have read Defendant EightStar Diamond Company's Memorandum in Opposition to Plaintiff's Motion to Dismiss and the documents attached to that pleading. The assertions EightStar makes that HOF has registrations in effect for these marks are simply incorrect, and the printouts from the PTO's web site attached to EightStar's opposition reflect clerical errors that were corrected in the application process prior to EightStar's opposition. If EightStar had reviewed the complete file histories for these applications, it would have been apparent to EightStar that HOF's marks have not been registered. Indeed, the printouts on which EightStar relies are missing essential information that would necessarily be reflected on such records to indicate valid and subsisting registrations.

5.      On August 8, 2001, HOF filed with the PTO five applications to register the marks THE WORLD'S MOST PERFECTLY CUT DIAMOND and THE MOST PERFECTLY CUT DIAMOND IN THE WORLD (individually referred to as the "Mark" or collectively as the "Marks"). The five trademark and service mark applications were assigned serial numbers 78/078,235, 78/078,237, 78/078,312, 78/078,313, and 78/078,314. I am attorney of record for all five applications.

6.      EightStar attaches to its opposition printouts from the PTO's web site regarding each of these five applications. However, EightStar groups application serial numbers 78/078,312 (the "'312 Application") and 78/078,313 (the "'313 Application") together as Exhibit 1 to its opposition and refers to these two applications in its opposition as evidentiary support for its assertion that these two marks are registered.

The printouts for the '312 and '313 Applications reflect a common clerical error. Specifically, each of these printouts indicates a date of amendment of the applications for registration on the Supplemental Register. In fact, each of these applications was subsequently amended back for registration on the Principal Register and neither has proceeded to final registration. EightStar incorrectly characterizes the date of the amendments for registration on the Supplemental Register (indicated on the printouts as "Supplemental Register Date") as evidence of registrations that have issued on the Supplemental Register.

8.      The '312 and '313 Applications were electronically filed on August 8, 2001 and claimed an intention to use the mark THE WORLD'S MOST PERFECTLY CUT DIAMOND and the mark THE MOST PERFECTLY CUT DIAMOND IN THE WORLD in connection with the services specified in each application. True and accurate copies of the original applications are attached hereto as Exhibits A-B.

9.      The clerical errors at issue were introduced to the '312 and '313 Applications in connection with Amendments to Allege Use that I filed for each of these applications on March 25, 2002.[1] Each Amendment to Allege Use for the '312 and '313 Applications contained a common typographical error that referred to registration of each Mark on the Supplemental Register. True and accurate copies of each Amendment to Allege Use for the '312 and '313 Applications are attached hereto as Exhibits D-E.

---

[1]      Such Amendments to Allege Use are a necessary step in the process of applying to register a mark that was not in use when the application for registration was originally filed. Attached as Exhibit C hereto is a true and accurate copy of section 806.01(b) from the PTO's Trademark Manual of Examining Procedure, which is the PTO's official publication providing guidance to PTO personnel and the public on the registration process. Section 806.01(b) discusses the nature of an intent to use application and the necessity of filing an allegation of use to obtain registration.

10.    The Supplemental Register exists for marks that are capable of distinguishing an applicant's goods or services but are not eligible for registration on the Principal Register. For example, a mark that has not yet become distinctive would not be registrable on the Principal Register but could be registered on the Supplemental Register if the mark was capable of acquiring distinctiveness. Attached hereto as Exhibit F is a true and accurate copy of section 815 of the Trademark Manual for Examining Procedure, which discusses the nature of the Supplemental Register.

11.    As soon as these errors were brought to my attention, I took the steps necessary to correct them and did, in fact, correct them.

12.    Specifically, these errors were brought to my attention when I subsequently received for each of the '312 and '313 Applications Office Actions dated July 15, 2002. In these Office Actions, Trademark Examining Attorney Gineen M. Bresso indicated that the amendment regarding the Supplemental Register was acceptable. True and accurate copies of these Office Actions are attached hereto as Exhibits G-H.

11.    In response to each of these July 15, 2002 Office Actions, I contacted Ms. Bresso on September 18, 2002 to draw to her attention to the fact that the references to the Supplemental Register were unintentional typographical errors and that HOF was not seeking to amend either application to obtain registration on the Supplemental Register, but instead sought to have each mark registered on the Principal Register. During this conversation, I noted that HOF had already filed Declarations of Acquired Distinctiveness, which are used to demonstrate that a mark for which registration on the Principal Register is sought has acquired the distinctiveness legally necessary for

registration on the Principal Register.[2]  By contrast, the Supplemental Register is used for marks that have not yet become distinctive and, therefore, are not yet legally protectible.

12.    Shortly after this telephone call, I received Office Actions dated September 19, 2002 for each of the '312 and '313 Applications, in which my September 18, 2002 telephone conversation with Ms. Bresso regarding the mistaken amendment was memorialized, and which stated that the "registration on the Supplemental Register is hereby withdrawn.  The applicant amends to the Principal Register Under Section 2(f)." True and accurate copies of the September 19 Office Actions are attached hereto as Exhibits K-L.

13.    For each of the '312 and '313 Applications, I subsequently received Notices of Publication dated November 13, 2002.  True and accurate copies of these Notices of Publication are attached hereto as Exhibits M-N.

14.    On December 3, 2002, both the '312 and '313 Applications were published in the *Official Gazette*.  A true and accurate copy of page TM453 of the December 3, 2002 volume of the *Official Gazette* containing the publication of the '312 and '313 Applications is attached hereto as Exhibit O.

15.    The publication record indicates that, with respect to both the '312 and '313 Applications, HOF is claiming that the Marks have acquired distinctiveness pursuant to section 2(f) of the Lanham Act.  Registration under section 2(f) of the Lanham Act is for the Principal Register.  Attached hereto as Exhibit P is a true and

---

[2]    Attached hereto as Exhibit I is a true and accurate copy of section 1212.03 of the Trademark Manual of Examining Procedure, which discusses the necessity of demonstrating that a mark has acquired distinctiveness when registration is sought under Section 2(f) of the Lanham Act governing marks that are not inherently distinctive but have acquired distinctiveness.  Attached hereto as Exhibit J is a true and accurate copy of section 1212.06(c) of the Trademark Manual of Examining Procedure, which discusses the use of such declarations to establish the requisite acquired distinctiveness.

accurate copy of section 1212 of the Trademark Manual of Examining Procedure, which

discusses registration on the Principal Register under section 2(f) of the Lanham Act.

Attached hereto as Exhibit Q is a true and accurate copy of section 815.01 of the

Trademark Manual of Examining Procedure, which states that a mark eligible for

registration on the Principal Register is not registrable on the Supplemental Register.

Thus, where section 2(f) is satisfied so as to render a mark is registrable on the Principal

Register, the mark cannot be registered on the Supplemental Register. Because the

Marks reflected in the '312 and '313 Applications have been published for opposition in

order to register them on the Principal Register after satisfying section 2(f), it is simply

not possible to register them on the Supplemental Register.

16.    HOF was never issued a registration certificate for registration on the

Supplemental Registration for either the '312 or '313 Applications. Indeed, HOF has

never been issued any registration certificate of any nature for the '312 or '313

Applications. Indeed, conspicuously absent from the printouts attached as Exhibit 1 to

EightStar's opposition is any Registration Date and any Registration Number. All

registrations on the Supplemental Register are given a Registration Date and a

Registration Number. Furthermore, a complete and accurate record from the PTO's web

site of a registration on the Supplemental Register will reflect the Registeration Date

(which appears on the PTO's web site records under the designation "Registration Date"

rather than the designation "Supplemental Register Date" used to reflect amendments for

registration to the Supplemental Register) Registration Number.

17.    For example, attached as Exhibit R is a true and accurate copy of a

printout from the PTO's web site showing a typical record reflecting all data that must be

present to indicate registration on the Supplemental Register (in this example, of a mark owned by another party and not at issue in this case). In this example, there is a "Supplemental Register Date" of September 24, 2004 indicating a date of amendment of the application for registration on the Supplemental Register. However, unlike the printouts for HOF's marks, which EightStar has attached to its opposition, this example also reflects a Registration Date of January 18, 2005—the date of actual registration on the Supplemental Register---and a Registration Number. The records that EightStar attaches to its opposition as Exhibit 1 contain no such Registration Date or Registration Number and, therefore, do not provide evidence of any registrations.

Signed and sworn under the penalties of perjury this 31st day of January, 2005

_____/gailyc c. sonia/_____
Gailyc C. Sonia

**Success!**

We have received your application and assigned serial number 78/078312 to your submission. We will send an Email summary of the application data to hiebert@shaysnet.com, which will be your official filing receipt. For electronically-submitted applications, the USPTO will no longer mail an additional paper filing receipt. However, since e-mail is not always reliable, please print out and save this notice. If the USPTO later determines that no filing date was justified, your submission will be returned, and your filing fee will be refunded. You would then have the opportunity to cure the deficiency, and re-file the application. Thank you.

**NOTE:** Do **NOT** send a duplicate paper copy of this filing to the USPTO, as it will interfere with the proper processing of the electronic submission and will result in your being charged for two filings, neither of which can be refunded.

**TEAS support team**
**Wednesday, 08-08-2001 20:09:29 EDT**



**Trademark Electronic Application System (TEAS) service**
**U.S. Patent and Trademark Office**

PTO Form 1478 (Rev 9/98)
OMB Control #0651-0009 (Exp. 08/31/2002)

## ~TRADEMARK/SERVICE MARK Application~

### * To the Commissioner for Trademarks *

<DOCUMENT INFORMATION>
<TRADEMARK/SERVICEMARK APPLICATION>
<VERSION 1.23>

<APPLICANT INFORMATION>
<NAME> Hearts on Fire Company
<STREET> 333 Washington Street, Suite 851
<CITY> Boston
<STATE> MA
<COUNTRY> USA
<ZIP/POSTAL CODE> 02108-5111
<TELEPHONE NUMBER> N.A.

<APPLICANT ENTITY INFORMATION>
<CORPORATION: STATE/COUNTRY OF INCORPORATION> Delaware

<TRADEMARK/SERVICEMARK INFORMATION>
<MARK> THE WORLD'S MOST PERFECTLY CUT DIAMOND
<TYPED FORM> Yes
~ Applicant requests registration of the above-identified trademark/service mark in the United States Patent and Trademark Office on the Principal Register established by the Act of July 5, 1946 (15 U.S.C. Section 1051 et seq., as amended). ~

<BASIS FOR FILING AND GOODS/SERVICES INFORMATION>
<INTENT TO USE: SECTION 1(b)> Yes
~ Applicant has a bona fide intention to use or use through a related company the mark in commerce on or in connection with the below-identified goods/services. (15 U.S.C. Section 1051(b), as amended.) ~
<INTERNATIONAL CLASS NUMBER> 035
<LISTING OF GOODS AND/OR SERVICES> Retail store services in the field of diamonds; online retail store services in the field of diamonds

<ATTORNEY INFORMATION>
<NAME> Timothy H. Hiebert
<STREET> 225 Franklin Street, Suite 3300
<CITY> Boston
<STATE> MA
<COUNTRY> USA
<ZIP/POSTAL CODE> 02110-2898
<E-MAIL ADDRESS> hiebert@shaysnet.com
<AUTHORIZE E-MAIL COMMUNICATION> Yes
<FIRM NAME> Samuels, Gauthier & Stevens LLP
<TELEPHONE NUMBER> 617-426-5553
<FAX NUMBER> 617-426-2275
<OTHER APPOINTED ATTORNEY(S)> I. Stephen Samuels

<FEE INFORMATION>
<TOTAL FEES PAID> 325
<NUMBER OF CLASSES PAID> 1
<NUMBER OF CLASSES> 1

**<DEPOSIT ACCOUNT INFORMATION>**
<DEPOSIT ACCOUNT NUMBER>   501427
~ The U.S. Patent and Trademark Office is hereby authorized to charge any fees or credit any
overpayments to the deposit account listed above. ~
<NAME OF PERSON AUTHORIZING ACCOUNT ACTIVITY>   Timothy H. Hiebert
<COMPANY/FIRM NAME>   Samuels, Gauthier & Stevens

**<LAW OFFICE INFORMATION>**
~ The USPTO is authorized to communicate with the applicant's attorney at the below e-mail address ~
<E-MAIL ADDRESS FOR CORRESPONDENCE>   hiebert@shaysnet.com

**<SIGNATURE AND OTHER INFORMATION>**
~ **PTO-Application Declaration**: The undersigned, being hereby warned that willful false statements and
the like so made are punishable by fine or imprisonment, or both, under 18 U.S.C. Section 1001, and that
such willful false statements may jeopardize the validity of the application or any resulting registration,
declares that he/she is properly authorized to execute this application on behalf of the applicant; he/she
believes the applicant to be the owner of the trademark/service mark sought to be registered, or, if the
application is being filed under 15 U.S.C. Section 1051(b), he/she believes applicant to be entitled to use
such mark in commerce; to the best of his/her knowledge and belief no other person, firm, corporation, or
association has the right to use the mark in commerce, either in the identical form thereof or in such near
resemblance thereto as to be likely, when used on or in connection with the goods/services of such other
person, to cause confusion, or to cause mistake, or to deceive; and that all statements made of his/her
own knowledge are true; and that all statements made on information and belief are believed to be true. ~
<SIGNATURE>   /Timothy H. Hiebert/
<DATE>   08/08/2001
<NAME>   Timothy H. Hiebert
<TITLE>   Attorney for Applicant

The information collected on this form allows the USPTO to determine whether a mark may be registered on the Principal or Supplemental register, and
providesnotice of an applicant's claim of ownership of the mark. Responses to the requestfor information are required to obtain the benefit of a
registration on the Principal or Supplemental register. 15 U.S.C. §§1051 et seq. and 37 C.F.R. Part 2. Allinformation collected will be made public.
Gathering and providing the information willrequire an estimated 12 or 16 minutes (depending if the application is based on an intentto use the mark in
commerce, use of the mark in commerce, or a foreign application or registration).Please direct comments on the time needed to complete this form,
and/or suggestions for reducing this burden to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of
Commerce,Washington D.C. 20231. Please note that the PTO may not conduct or sponsor a collection of information using a form that does not
display a valid OMB control number.

**Drawing Page**
**Date/Time Stamp:** Wednesday, 08-08-2001 20:09:10 EDT

**Applicant:**
Hearts on Fire Company
333 Washington Street, Suite 851
Boston , MA 02108-5111
USA

**Date of First Use Anywhere: Intent-To-Use (Section 1(b))**
**Date of First Use In Commerce: Intent-To-Use (Section 1(b))**

**Goods and Services:**
Retail store services in the field of diamonds; online retail store services in the field of diamonds

**Mark:**

### THE WORLD'S MOST PERFECTLY CUT DIAMOND

**Success!**



We have received your application and assigned serial number 78/078313 to your submission. We will send an Email summary of the application data to hiebert@shaysnet.com, which will be your official filing receipt. For electronically-submitted applications, the USPTO will no longer mail an additional paper filing receipt. However, since e-mail is not always reliable, please print out and save this notice. If the USPTO later determines that no filing date was justified, your submission will be returned, and your filing fee will be refunded. You would then have the opportunity to cure the deficiency, and re-file the application. Thank you.

NOTE: Do NOT send a duplicate paper copy of this filing to the USPTO, as it will interfere with the proper processing of the electronic submission and will result in your being charged for two filings, neither of which can be refunded.

**TEAS support team**
**Wednesday, 08-08-2001 20:14:07 EDT**

Trademark Electronic Application System (TEAS) service
U.S. Patent and Trademark Office

PTO Form 1478 (Rev 9/98)
OMB Control #0851-0009 (Exp. 08/31/2002)

## ~TRADEMARK/SERVICE MARK Application~

### * To the Commissioner for Trademarks *

<DOCUMENT INFORMATION>
<TRADEMARK/SERVICEMARK APPLICATION>
<VERSION 1.23>

### <APPLICANT INFORMATION>
<NAME>  Hearts on Fire Company
<STREET>  333 Washington Street, Suite 851
<CITY>  Boston
<STATE>  MA
<COUNTRY>  USA
<ZIP/POSTAL CODE>  02108-5111
<TELEPHONE NUMBER>  N.A.

### <APPLICANT ENTITY INFORMATION>
<CORPORATION: STATE/COUNTRY OF INCORPORATION>  Delaware

### <TRADEMARK/SERVICEMARK INFORMATION>
<MARK>  THE MOST PERFECTLY CUT DIAMOND IN THE WORLD
<TYPED FORM>  Yes
~ Applicant requests registration of the above-identified trademark/service mark in the United States
Patent and Trademark Office on the Principal Register established by the Act of July 5, 1946 (15 U.S.C.
Section 1051 et seq., as amended). ~

### <BASIS FOR FILING AND GOODS/SERVICES INFORMATION>
<INTENT TO USE: SECTION 1(b)>  Yes
~ Applicant has a bona fide intention to use or use through a related company the mark in commerce on
or in connection with the below-identified goods/services. (15 U.S.C. Section 1051(b), as amended.) ~
<INTERNATIONAL CLASS NUMBER>  035
<LISTING OF GOODS AND/OR SERVICES>  Retail store services in the field of diamonds; online retail store
services in the field of diamonds; wholesale distributorship services in the field of diamonds; wholesale stores
featuring diamonds

### <ATTORNEY INFORMATION>
<NAME>  Timothy H. Hiebert
<STREET>  225 Franklin Street, Suite 3300
<CITY>  Boston
<STATE>  MA
<COUNTRY>  USA
<ZIP/POSTAL CODE>  02110-2898
<E-MAIL ADDRESS>  hiebert@shaysnet.com
<AUTHORIZE E-MAIL COMMUNICATION>  Yes
<FIRM NAME>  Samuels, Gauthier & Stevens LLP
<TELEPHONE NUMBER>  617-426-5553
<FAX NUMBER>  617-426-2275
<OTHER APPOINTED ATTORNEY(S)>  I. Stephen Samuels

### <FEE INFORMATION>
<TOTAL FEES PAID>  325
<NUMBER OF CLASSES PAID>  1

<NUMBER OF CLASSES>  1

<DEPOSIT ACCOUNT INFORMATION>
<DEPOSIT ACCOUNT NUMBER>  501427
~ The U.S. Patent and Trademark Office is hereby authorized to charge any fees or credit any overpayments to the deposit account listed above. ~
<NAME OF PERSON AUTHORIZING ACCOUNT ACTIVITY>  Timothy H. Hiebert
<COMPANY/FIRM NAME>  Samuels, Gauthier & Stevens

<LAW OFFICE INFORMATION>
~ The USPTO is authorized to communicate with the applicant's attorney at the below e-mail address ~
<E-MAIL ADDRESS FOR CORRESPONDENCE>  hiebert@shaysnet.com

<SIGNATURE AND OTHER INFORMATION>
~ PTO-Application Declaration: The undersigned, being hereby warned that willful false statements and the like so made are punishable by fine or imprisonment, or both, under 18 U.S.C. Section 1001, and that such willful false statements may jeopardize the validity of the application or any resulting registration, declares that he/she is properly authorized to execute this application on behalf of the applicant; he/she believes the applicant to be the owner of the trademark/service mark sought to be registered, or, if the application is being filed under 15 U.S.C. Section 1051(b), he/she believes applicant to be entitled to use such mark in commerce; to the best of his/her knowledge and belief no other person, firm, corporation, or association has the right to use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely, when used on or in connection with the goods/services of such other person, to cause confusion, or to cause mistake, or to deceive; and that all statements made of his/her own knowledge are true; and that all statements made on information and belief are believed to be true. ~
<SIGNATURE>  /Timothy H. Hiebert/
<DATE>  08/08/2001
<NAME>  Timothy H. Hiebert
<TITLE>  Attorney for Applicant

The information collected on this form allows the USPTO to determine whethera mark may be registered on the Principal or Supplemental register, and providesnotice of an applicant's claim of ownership of the mark. Responses to the requestfor information are required to obtain the benefit of a registration on the Principal or Supplemental register. 15 U.S.C. §§1051 et seq. and 37 C.F.R. Part 2. Allinformation collected will be made public. Gathering and providing the information willrequire an estimated 12 or 18 minutes (depending if the application is based on an intentto use the mark in commerce, use of the mark in commerce, or a foreign application or registration).Please direct comments on the time needed to complete this form, and/or suggestions for reducing this burden to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce,Washington D.C. 20331. Please note that the PTO may not conduct or sponsor a collection of information using a form that does not display a valid OMB control number.

**Drawing Page**
**Date/Time Stamp:** Wednesday, 08-08-2001 20:13:43 EDT

**Applicant:**
Hearts on Fire Company
333 Washington Street, Suite 851
Boston , MA 02108-5111
USA

**Date of First Use Anywhere: Intent-To-Use (Section 1(b))**
**Date of First Use In Commerce: Intent-To-Use (Section 1(b))**

**Goods and Services:**
Retail store services in the field of diamonds; online retail store services in the field of diamonds; wholesale
distributorship services in the field of diamonds; wholesale stores featuring diamonds

**Mark:**

THE MOST PERFECTLY CUT DIAMOND IN THE WORLD

## APPLICATION REQUIREMENTS

**806.01**        **Requirements for Establishing a Basis**

The requirements for establishing a basis are set forth in TMEP §§806.01(a) through 806.01(d). If these requirements are not met in the original application, the examining attorney will require the applicant to comply with them in the first Office action.

**806.01(a)**        **Use in Commerce - §1(a)**

Under 15 U.S.C. §1051(a) and 37 C.F.R. §2.34(a)(1), the requirements for establishing a basis under §1(a) of the Trademark Act are:

(1)   The applicant must submit a verified statement that the mark is in use in commerce on or in connection with the goods or services listed in the application. If this verified statement is not filed with the initial application, the verified statement must state that the mark was in use in commerce on or in connection with the goods or services listed in the application *as of the application filing date* (37 C.F.R. §2.34(a)(1)(i));

(2)   The applicant must specify the date of the applicant's first use of the mark anywhere on or in connection with the goods or services (37 C.F.R. §2.34(a)(1)(ii); TMEP §903.01);

(3)   The applicant must specify the date of the applicant's first use of the mark in commerce as a trademark or service mark (37 C.F.R. §2.34(a)(1)(iii); TMEP §903.02); and

(4)   The applicant must submit one specimen for each class, showing how the applicant actually uses the mark in commerce (37 C.F.R. §§2.34(a)(1)(iv) and 2.56; TMEP §§904 *et seq*.).

The Trademark Act defines "commerce" as commerce which may lawfully be regulated by Congress, and "use in commerce" as the bona fide use of a mark in the ordinary course of trade. 15 U.S.C. §1127; 37 C.F.R. §2.34(c). *See* TMEP §§901 *et seq*.

An applicant may claim both use in commerce under §1(a) of the Act and intent-to-use under §1(b) of the Act as a filing basis in the same application, but may not assert both §1(a) and §1(b) for the identical goods or services. 37 C.F.R. §2.34(b)(1); TMEP §806.02(b).

An applicant may not claim a §1(a) basis unless the mark was in use in commerce on or in connection with *all* the goods or services covered by the §1(a) basis as of the application filing date. 37 C.F.R. §§2.34(a)(1)(i) and (v). *Cf. E.I. du Pont de Nemours & Co. v. Sunlyra International, Inc.*, 35 USPQ2d 1787, 1791 (TTAB 1995).

If the applicant claims use in commerce in addition to another filing basis, but does not specify which goods or services are covered by which basis, the Office may defer examination of the specimen(s) until the applicant identifies the goods or services for which use is claimed. TMEP §806.02(c).

TRADEMARK MANUAL OF EXAMINING PROCEDURE

**806.01(b)        Intent-to-Use - §1(b)**

In an application based on 15 U.S.C. §1051(b), the applicant must submit a verified statement that the applicant has a bona fide intention to use the mark in commerce on or in connection with the goods or services listed in the application. If the verified statement is not filed with the initial application, the verified statement must allege that the applicant had a bona fide intention to use the mark in commerce on or in connection with the goods or services *as of the filing date of the application.* 37 C.F.R. §2.34(a)(2)(i).

The application may list more than one item of goods, or more than one service, if the applicant had a bona fide intention to use the mark in commerce on or in connection with all the specified goods or services as of the filing date of the application. 37 C.F.R. §§2.34(a)(2)(i) and (ii).

Prior to registration, the applicant must file an allegation of use (*i.e.,* either an amendment to allege use under 15 U.S.C. §1051(c) or a statement of use under 15 U.S.C. §1051(d)) that states that the applicant is using the mark in commerce on or in connection with the goods or services; includes dates of use and a filing fee for each class; and includes one specimen evidencing such use for each class. *See* 37 C.F.R. §2.76 and TMEP §§1104 *et seq.* regarding amendments to allege use, and 37 C.F.R. §2.88 and TMEP §§1109 *et seq.* regarding statements of use.

Once an applicant claims a §1(b) basis for any or all of the goods or services, the applicant may not amend the application to seek registration under §1(a) of the Act for those goods or services unless the applicant files an allegation of use under §1(c) or §1(d) of the Act. 37 C.F.R. §2.35(h).

*See* TMEP Chapter 1100 for additional information about intent-to-use applications.

**806.01(c)        Foreign Priority - §44(d)**

Under 15 U.S.C. §1126(d) and 37 C.F.R. §2.34(a)(4), the requirements for receipt of a priority filing date based on a previously-filed foreign application are:

(1)    The applicant must file a claim of priority within six months of the filing date of the foreign application. 37 C.F.R. §§2.34(a)(4)(i) and 2.35(e).

(2)    The applicant must:  (a) specify the filing date and country of the first regularly filed foreign application; or (b) state that the application is based upon a subsequent regularly filed application in the same foreign country, and that any prior-filed application has been withdrawn, abandoned or otherwise disposed of, without having been laid open to public inspection and without having any rights outstanding, and has not served as a basis for claiming a right of priority. 37 C.F.R. §§2.34(a)(4)(i)(A) and (B).

(3)    The applicant must verify that the applicant has a bona fide intention to use the mark in commerce on or in connection with the goods or services listed in the

## APPLICATION REQUIREMENTS

application. This allegation is required even if use in commerce is asserted in the application. TMEP §806.02(e). If the verified statement is not filed with the initial application, the verified statement must allege that the applicant had a bona fide intention to use the mark in commerce *as of the filing date of the application.* 37 C.F.R. §2.34(a)(4)(ii).

The application may list more than one item of goods, or more than one service, if the applicant had a bona fide intention to use the mark in commerce on or in connection with all the specified goods or services as of the filing date of the application. 37 C.F.R. §§2.34(a)(4)(ii) and (iv).

The scope of the goods covered by the §44 basis in the United States application cannot exceed the scope of the goods or services in the foreign application or registration. 37 C.F.R. §2.32(a)(6); TMEP §1402.01(b).

Section 44(d) of the Act provides a basis for receipt of a priority filing date, but not a basis for publication or registration. Before the application can be approved for publication, or for registration on the Supplemental Register, the applicant must establish a basis under §1(a), §1(b), or §44(e) of the Act. 37 C.F.R. §2.34(a)(4)(iii); TMEP §1003.03. If the applicant claims a §1(b) basis, the applicant must file an allegation of use (*i.e.,* either an amendment to allege use under 15 U.S.C. §1051(c) or a statement of use under 15 U.S.C. §1051(d)) before the mark can be registered. *See* TMEP §806.01(b) regarding the requirements for a §1(b) basis.

If an applicant properly claims a §44(d) basis in addition to another basis, the applicant may retain the priority filing date without perfecting the §44(e) basis. 37 C.F.R. §§2.35(c) and (d). *See* TMEP §806.04(b) regarding processing an amendment electing not to perfect a §44(e) basis, and TMEP §806.02(f) regarding the examination of applications that claim §44(d) in addition to another basis.

*See* TMEP §§1003 *et seq.* for further information about §44(d) applications.

### 806.01(d)    Foreign Registration — §44(e) [R-2]

Under 15 U.S.C. §1126(e) and 37 C.F.R. §2.34(a)(3), the requirements for establishing a basis for registration under §44(e), relying on a registration granted by the applicant's country of origin, are:

(1)    The applicant must submit a true copy, a photocopy, a certification, or a certified copy of the registration in the applicant's country of origin. 37 C.F.R. §2.34(a)(3)(ii); TMEP §§1004.01 and 1004.01(b).

(2)    The application must include the applicant's verified statement that it has a bona fide intention to use the mark in commerce on or in connection with the identified goods or services. This allegation is required even if use in commerce is asserted in the application. TMEP §806.02(e). If the verified statement is not filed with the

## TRADEMARK MANUAL OF EXAMINING PROCEDURE

initial application, the verified statement must allege that the applicant had a bona fide intention to use the mark in commerce *as of the application filing date*. 37 C.F.R. §2.34(a)(3)(i).

(3)  The applicant's country of origin must either be a party to a convention or treaty relating to trademarks to which the United States is also a party, or extend reciprocal registration rights to nationals of the United States by law. *See* TMEP §§1002 *et seq.*

The application may list more than one item of goods, or more than one service, provided the applicant had a bona fide intention to use the mark in commerce on or in connection with all the specified goods or services as of the filing date of the application. 37 C.F.R. §§2.34(a)(3)(i) and (iv).

The scope of the goods covered by the §44 basis in the United States application cannot exceed the scope of the goods or services in the foreign registration. 37 C.F.R. §2.32(a)(6); TMEP §1402.01(b).

An application may be based on more than one foreign registration. If the applicant amends an application to rely on a different foreign registration, this is considered a change in basis. TMEP §1004.02. *See* TMEP §§806.03 *et seq.* regarding amendments to add or substitute a basis.

*See* TMEP §1004 *et seq.* for further information about §44(e) applications.

### 806.02          Multiple Bases

### 806.02(a)        Procedure for Asserting More Than One Basis

If the applicant claims more than one basis, the applicant must satisfy all requirements for each basis claimed. 37 C.F.R. §2.34(b)(1). The applicant must clearly indicate that more than one basis is claimed, and must separately list each basis, followed by the goods or services to which that basis applies. If some or all of the goods or services are covered by more than one basis, this must be stated. 37 C.F.R. §§2.34(b)(2) and 2.35(f).

> *Example*: Based on use - SHIRTS AND COATS, in Class 25; Based on intent to use - DRESSES, in Class 25.

The applicant may assert different bases for different classes, and may also assert different bases as to different goods or services within a class.

The applicant may claim a §44 basis in addition to *either* a §1(a) *or* a §1(b) basis for the same goods or services. However, the applicant may not assert both a §1(a) and §1(b) basis for the identical goods or services. 37 C.F.R. §2.34(b)(1).



HUTCHINS, WHEELER & DITTMAR

TRADEMARK
Reference No. HOF TM-0003

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

---

**APPLICANT:** Hearts On Fire Company

**SERIAL NO.:** 78/078,312

**TRADEMARK:** THE WORLD'S MOST PERFECTLY CUT DIAMOND

**FILED:** August 8, 2001

---

Box ITU FEE
Assistant Commissioner for Trademarks
2900 Crystal Drive
Arlington, VA 22202-3513

Amendment to Allege Use Under 37 C.F.R. Section 2.76

Madame:

Applicant, Hearts On Fire Company, requests registration of the above-identified trademark in the United States Patent and Trademark Office on the Supplemental Register established by the Act of July 5, 1946 (15 U.S.C. Section 1051, *et seq.*, as amended).

Applicant is using the mark in commerce on or in connection with the following goods or services identified in the Application.

> **Retail store services in the field of diamonds; online retail store services in the field of diamonds, in International Class 35.**

The mark was first used on January 1, 1997, and the mark was first used in Interstate commerce at least as early as January 1, 1997; and the mark is now used in such commerce.

The mark is used by on advertising and promotional materials, and on a web site. A specimen showing the mark as actually used in commerce for the goods and services set forth above is submitted with this Amendment.

HWD2 983211v1

## Declaration

Robert F. Gorton, being duly warned that willful false statements and the like so made are punishable by fine or imprisonment or both under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application, document or any registration resulting therefrom, declares that he is the Chief Financial Officer of Applicant and is authorized to make this declaration on behalf of Applicant; that he believes Applicant to be the owner of the mark sought to be registered; that to the best of his knowledge and belief no other person, firm, corporation or association has the right to use that mark in commerce, either in the identical form or in such near resemblance thereto as may be likely, when used on or in connection with the goods of such other person, to cause confusion, or to cause mistake, or to deceive; that the accompanying specimens show the mark as used in commerce in connection with Applicant's goods or services; that all statements made herein of his own knowledge are true and that all statements made on information and belief are believed to be true.

Date: _3/25/02_

Name: Robert F. Gorton
Title:    Chief Financial Officer

Applicant:    Hearts On Fire Company

HUTCHINS, WHEELER & DITTMAR

---

### CERTIFICATE OF EXPRESS MAILING

I hereby certify that this patent application being filed is being deposited with the United States Postal Service as Express Mail in an envelope addressed to: Box ITU – Fee, Assistant Commissioner for Trademarks, 2900 Crystal Drive, Arlington, Virginia 22202-3513, on March 25, 2002.

Name of Person Signing Certificate: Tracey A. Newell     **EL954637135US**
Express Mail Certificate No.: EL954637135US

Signature: _____

Date of Signing: _____

---



HUTCHINS, WHEELER & DITTMAR

TRADEMARK
Reference No. HOF TM-0005

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

---

**APPLICANT:** Hearts On Fire Company

**SERIAL NO.:** 78/078,313

**TRADEMARK:** THE MOST PERFECTLY CUT DIAMOND IN THE WORLD

**FILED:** August 8, 2001

---

**Box ITU FEE**
Assistant Commissioner for Trademarks
2900 Crystal Drive
Arlington, VA 22202-3513

### Amendment to Allege Use Under 37 C.F.R. Section 2.76

Madame:

Applicant, Hearts On Fire Company, requests registration of the above-identified trademark in the United States Patent and Trademark Office on the Supplemental Register established by the Act of July 5, 1946 (15 U.S.C. Section 1051, *et seq.*,as amended).

Applicant is using the mark in commerce on,or in connection with the following goods or services identified in the Application.

> Retail store services in the field of diamonds; online retail store services in the field of diamonds; wholesale distributorship services in the field of diamonds; wholesale stores featuring diamonds, in International Class 35.

The mark was first used on January 1, 1997, and the mark was first used in Interstate commerce at least as early as January 1, 1997; and the mark is now used in such commerce.

The mark is used on advertising and promotional materials, and on a web site. A specimen showing the mark as actually used in commerce for the goods and services set forth above is submitted with this Amendment.

HWD2 983212v1

## Declaration

Robert F. Gorton, being duly warned that willful false statements and the like so made are punishable by fine or imprisonment or both under Section 1001 of Title 18 of the United States Code and that such willful false statements may jeopardize the validity of the application, document or any registration resulting therefrom, declares that he is the Chief Financial Officer of Applicant and is authorized to make this declaration on behalf of Applicant; that he believes Applicant to be the owner of the mark sought to be registered; that to the best of his knowledge and belief no other person, firm, corporation or association has the right to use that mark in commerce. either in the identical form or in such near resemblance thereto as may be likely, when used on or in connection with the goods of such other person, to cause confusion, or to cause mistake, or to deceive; that the accompanying specimens show the mark as used in commerce in connection with Applicant's goods or services; that all statements made herein of his own knowledge are true and that all statements made on information and belief are believed to be true.

Date: 3/25/02

Name: Robert F. Gorton
Title:   Chief Financial Officer

Applicant:      Hearts On Fire Company

HUTCHINS, WHEELER & DITTMAR

---

### CERTIFICATE OF EXPRESS MAILING

I hereby certify that this patent application being filed is being deposited with the United States Postal Service as Express Mail in an envelope addressed to: Box ITU – Fee, Assistant Commissioner for Trademarks, 2900 Crystal Drive, Arlington, Virginia 22202-3513, on March 25, 2002.

Name of Person Signing Certificate: Tracey A. Newell       EL954637118US
Express Mail Certificate No.: EL954637118US

Signature: ~~Tracey A. Newell~~

Date of Signing: 3-25-02

---

HWD2 983212v1                                 3



## APPLICATION REQUIREMENTS

*Inc.*, 192 USPQ 157 (TTAB 1976); 37 C.F.R. §2.61(b). If the applicant does not comply with a requirement for information, registration may be refused.

If the applicant does not comply with the examining attorney's request for information, the requirement should be repeated and, if appropriate, made final. *See In re SPX Corp.*, 63 USPQ2d 1592 (TTAB 2002) (registration properly refused where applicant ignores request for information); *In re Page*, 51 USPQ2d 1660 (TTAB 1999) (intent-to-use applicant's failure to comply with requirement for information as to the intended use of the mark constitutes grounds for refusal); *In re Babies Beat Inc.*, 13 USPQ2d 1729, 1731 (TTAB 1990) (registration properly refused where applicant failed to comply with examining attorney's request for copies of patent applications and other patent information).

The examining attorney may request literature, exhibits, and general information concerning circumstances surrounding the mark and, if applicable, its use or intended use. Requests for information that is not public knowledge, but is peculiarly within the knowledge of the applicant or available to the applicant, are particularly appropriate. The examining attorney should explain why the information is needed, if the reason is not obvious.

If the requested information is confidential, or if for a valid reason the applicant does not want to have the information become part of a public record, the applicant should explain those circumstances. Placing confidential information in a file is not required. Sometimes an explanation will suffice, or material may be shown to the examining attorney without formal filing. Usually a way can be found to give the necessary information to the examining attorney without imposing an undue burden on the applicant.

## 815          Supplemental Register, Application Filed on

Sections 23 through 28 of the Trademark Act, 15 U.S.C. §§1091 through 1096, provide for registration on the Supplemental Register. Certain marks that are not eligible for registration on the Principal Register, but are capable of distinguishing an applicant's goods or services, may be registered on the Supplemental Register. Marks registered on the Supplemental Register are excluded from receiving the advantages of certain sections of the Act of 1946. The excluded sections are listed in 15 U.S.C. §1094.

If the applicant seeks registration on the Supplemental Register, the application should state that registration is requested on the Supplemental Register. If no register is specified, the Office will presume that the applicant seeks registration on the Principal Register.

*See* TMEP §§816 *et seq.* regarding amendments to the Supplemental Register.

### 815.01          Marks Eligible for Principal Register Not Registrable on Supplemental Register

A mark that is clearly eligible for the Principal Register may not be registered on the Supplemental Register. An application requesting registration on the Supplemental Register must be amended to the Principal Register, or refused registration if the mark is registrable

## TRADEMARK MANUAL OF EXAMINING PROCEDURE

on the Principal Register. *Daggett & Ramsdell, Inc. v. I. Posner, Inc.*, 115 USPQ 96 (Comm'r Pats. 1957).

### 815.02    Elements Required

An application requesting registration on the Supplemental Register should state that the applicant requests registration on the Supplemental Register. If no register is specified, the Office will assume that the applicant is requesting registration on the Principal Register.

In an application under §1(a) or §1(b), the mark must be in lawful use in commerce on or in connection with the goods and services before the mark can register. 15 U.S.C. §1091(a). Under 37 C.F.R. §2.47(c), an intent-to-use applicant may not seek registration on the Supplemental Register until the applicant has timely filed either an amendment to allege use under 15 U.S.C. §1051(c) or a statement of use under 15 U.S.C. §1051(d) that meets minimum filing requirements. (*See* 37 C.F.R. §2.76(e) and TMEP §1104.01 regarding the minimum filing requirements for an amendment to allege use, and 37 C.F.R. §2.88(e) and TMEP §1109.01 regarding the minimum filing requirements for a statement of use.) 37 C.F.R. §§2.47(c) and 2.75(b). When the applicant amends to the Supplemental Register after filing an acceptable amendment to allege use or statement of use, the effective filing date of the application is the date on which the applicant filed the amendment to allege use or statement of use. *See* TMEP §§816.02 and 1102.03.

If an applicant submits a §1(b) application requesting registration on the Supplemental Register for which no allegation of use has been filed, the examining attorney must refuse registration under §23 of the Act on the ground that the mark is not in lawful use in commerce. The examining attorney will withdraw the refusal if the applicant submits an acceptable allegation of use. As noted above, the effective filing date of the application will be the date on which the applicant filed the allegation of use. 37 C.F.R. §2.47(c).

If the application is based solely on §44, the applicant may seek registration on the Supplemental Register without alleging lawful use in commerce and without alleging use anywhere in the world. 15 U.S.C. §1126(e); 37 C.F.R. §2.47(b); TMEP §1009. However, the §44 applicant must verify that the applicant has a bona fide intention to use the mark in commerce. 15 U.S.C. §§1126(d) and (e); 37 C.F.R. §§2.34(a)(3)(i) and 2.34(a)(4)(ii).

### 815.03    Examining Attorney Signs File for Issue

Upon approval of the mark for registration, the examining attorney will sign the face of the file in the space marked "Approved for Supplemental Registration" rather than the space for approval for publication. Marks on the Supplemental Register are not published for opposition, but are issued as registered marks on the date that they are printed in the *Official Gazette*.

Applications on the Supplemental Register are not subject to opposition under 15 U.S.C. §1063, but are subject to cancellation under 15 U.S.C. §1064. 15 U.S.C. §1092.

## APPLICATION REQUIREMENTS

**815.04**     **Filing on Supplemental Register is Not an Admission That the Mark Has Not Acquired Distinctiveness**

Under 15 U.S.C. §1095, registration of a mark on the Supplemental Register does not constitute an admission that the mark has not acquired distinctiveness.

**815.05**     **Basis for Refusal of Registration of Matter That is Incapable**

When the examining attorney refuses registration on the Supplemental Register on the ground that the proposed mark is incapable of distinguishing the applicant's goods or services, the examining attorney should cite §§23(c) and 45 of the Trademark Act, 15 U.S.C. §§1091(c) and 1127, as a basis for refusal. *See In re Controls Corp. of America,* 46 USPQ2d 1308, 1309 n. 2 (TTAB 1998).

**816**     **Supplemental Register, Amending Application to**

**816.01**     **How to Amend**

If an application meets the requirements noted in TMEP §815.02, the application may be amended by requesting that the words "Principal Register" be changed to "Supplemental Register."

**816.02**     **Effective Filing Date**

*Intent-to-Use Applications*

As noted in TMEP §815.02, an intent-to-use applicant may file an amendment to the Supplemental Register only after the applicant has begun using the mark and filed an amendment to allege use under §1(c) or statement of use under §1(d) that meets minimum filing requirements. In such a case, the effective filing date of the application is the date on which the applicant met the minimum filing requirements for the amendment to allege use or statement of use. 37 C.F.R. §2.75(b); TMEP §1102.03. *See* 37 C.F.R. §2.76(e) and TMEP §1104.01 regarding the minimum filing requirements for an amendment to allege use, and 37 C.F.R. §2.88(e) and TMEP §1109.01 regarding the minimum filing requirements for a statement of use. The examining attorney should examine the amendment to allege use or statement of use before taking any action on the amendment to the Supplemental Register.

*Applications Filed Before November 16, 1989*

Prior to November 16, 1989, one year's lawful use of the mark in commerce was required to apply for registration on the Supplemental Register. Effective November 16, 1989, an applicant may apply for registration on the Supplemental Register at any time after commencing use of the mark in commerce.

An applicant may amend a pending application to request registration on the Supplemental Register at any time after use of the mark has commenced, even if the original application for





A PROPER RESPONSE TO THIS OFFICE ACTION MUST BE RECEIVED WITHIN 6 MONTHS FROM THE DATE OF THIS ACTION IN ORDER TO AVOID *ABANDONMENT*. *For your convenience and to ensure proper handling of your response, a label has been enclosed. Please attach it to the upper right corner of your response. If the label is not enclosed, print or type the Trademark Law Office No., Serial No., and Mark in the upper right corner of your response.*

RE: Serial Number: 78/078312

This letter responds to the applicant's communication filed on March 25, 2002.

The refusal to register based on Section 2(d) of the Trademark Act as to Registration Nos. 2476833 and 1278889 and prior pending applications 75431191 and 76286707 are hereby withdrawn.

The amendments regarding the supplemental register, the specimen and the amendment to allege use is acceptable and has been entered.

**Disclaimer**

The applicant must insert the required disclaimer even if registration of the mark is sought on the Supplemental Register or on the Principal Register under Section 2(f), because the term CUT DIAMOND is generic for the applicant's services since they are for cut diamonds. *In re Wella Corp.*, 565 F.2d 143, 196 USPQ 7 (C.C.P.A. 1977); *In re Creative Goldsmiths of Washington, Inc.*, 229 USPQ 766 (TTAB 1986); *In re Carolyn's Candies, Inc.*, 206 USPQ 356 (TTAB 1980); TMEP §1213.03(b).

The computerized printing format for the *Trademark Official Gazette* requires a standard form for a disclaimer. TMEP §1213.08(a)(i). A properly worded disclaimer should read as follows:

No claim is made to the exclusive right to use **CUT DIAMOND** apart from the mark as shown.

78/078312                                -2-

*See In re Owatonna Tool Co.*, 231 USPQ 493 (Comm'r Pats. 1983).

If the applicant has any questions or needs assistance in responding to this Office action, please telephone the assigned examining attorney.

Gineen M. Bresso
Trademark Attorney
Law Office 111
703-308-9111 ext. 260

# UNITED STA.. ES PATENT AND TRADEMA.. COFFICE

RECEIVED HWD

| SERIAL NO. | APPLICANT | | PAPER NO. |
|---|---|---|---|
| 78/078313 | Hearts on Fire Company | JUL 1 2 2002 | |

**MARK**

IP DEPT.

THE MOST PERFECTLY CUT DIAMOND IN THE WOETC.

| **ADDRESS**<br>GAILYC C. SONIA<br>HUTCHINS, WHEELER & DITTMAR<br>101 FEDERAL STREET    Resp to OA<br>BOSTON MA 02110-1804<br><br>Der 1-15-03. | **ACTION NO.**<br>03<br><br>**MAILING DATE**<br>07/15/02<br><br>**REF. NO.**<br>HoF TM-0005 | **ADDRESS:**<br>Commissioner for Trademarks<br>2900 Crystal Drive<br>Arlington, VA 22202-3513<br>www.uspto.gov<br>If no fees are enclosed, the address should include<br>the words "Box Responses - No Fee." |

FORM PTO-1525 (5-90)          U.S. DEPT. OF COMM. & TM OFFICE

TRADEMARK LAW OFFICE 11
Serial Number:  78/078313
Mark:    THE MOST PERFECTLY CUT DIAMOND IN THE WO
        **Please Place on Upper Right Corner**
        **of Response to Office Action ONLY **

Please provide in all correspondence:
1. Filing Date, serial number, mark and
   Applicant's name.
2. Mailing date of this Office action.
3. Examining Attorney's name and
   Law Office number.
4. Your telephone number and ZIP code.

**A PROPER RESPONSE TO THIS OFFICE ACTION MUST BE RECEIVED WITHIN 6 MONTHS FROM THE DATE OF THIS ACTION IN ORDER TO AVOID *ABANDONMENT*.** *For your convenience and to ensure proper handling of your response, a label has been enclosed. Please attach it to the upper right corner of your response. If the label is not enclosed, print or type the* Trademark Law Office No., Serial No., *and* Mark *in the upper right corner of your response.*

RE: Serial Number: 78/078313

This letter responds to the applicant's communication filed on March 25, 2002.

The refusal to register based on Section 2(d) of the Trademark Act as to Registration Nos. 2476833 and 1278889 and prior pending applications 75431191 and 76286707 are hereby withdrawn.

The amendment to the supplemental register is acceptable and has been entered.

The amendment to allege use is unacceptable because the specimen submitted is only acceptable for use on services.

## Specimen Unacceptable

The specimen is unacceptable as evidence of actual trademark use because it is a picture of a billboard used for advertising, which is only acc. The applicant must submit a specimen showing the mark as used in commerce. 37 C.F.R. §§2.56 and 2.76(b)(2). Examples of acceptable specimens are tags, labels, instruction manuals, containers or photographs that show the mark on the goods or packaging. TMEP §904.04 *et seq*. The applicant must verify, with an affidavit or a declaration under 37 C.F.R. §2.20, that the applicant used the substitute specimen in commerce prior to filing the amendment to allege use. *Jim Dandy Co. v. Siler City Mills, Inc.*, 209 USPQ 764 (TTAB 1981); 37 C.F.R. §2.59(b)(1).

78/078313                                        -2-

**Disclaimer**

The applicant must insert the required disclaimer even if registration of the mark is sought on the Supplemental Register or on the Principal Register under Section 2(f), because the term CUT DIAMOND is generic for the applicant's goods, namely, cut diamonds. *In re Wella Corp.*, 565 F.2d 143, 196 USPQ 7 (C.C.P.A. 1977); *In re Creative Goldsmiths of Washington, Inc.*, 229 USPQ 766 (TTAB 1986); *In re Carolyn's Candies, Inc.*, 206 USPQ 356 (TTAB 1980); TMEP §1213.03(b).

The computerized printing format for the *Trademark Official Gazette* requires a standard form for a disclaimer. TMEP §1213.08(a)(i). A properly worded disclaimer should read as follows:

> No claim is made to the exclusive right to use **CUT DIAMOND** apart from the mark as shown.

*See In re Owatonna Tool Co.*, 231 USPQ 493 (Comm'r Pats. 1983).

If the applicant has any questions or needs assistance in responding to this Office action, please telephone the assigned examining attorney.

Gineen M. Bresso
Trademark Attorney
Law Office 111
703-308-9111 ext. 260



### TRADEMARK MANUAL OF EXAMINING PROCEDURE

970 n.2 (TTAB 1986) ("If matter proposed for registration does not function as a mark, it is not registrable in accordance with Sections 1 and 2 of the Act because the preambles of those sections limit registration to subject matter within the definition of a trademark."); *In re Whataburger Systems, Inc.,* 209 USPQ 429, 430 (TTAB 1980) ("[A] designation may not be registered either as a trademark or as a service mark unless it is used as a mark, in such a manner that its function as an indication of origin may be readily perceived by persons encountering the goods or services in connection with which it is used.").

Therefore, where the examining attorney has determined that matter sought to be registered is not registrable because it is not a mark within the meaning of the Trademark Act, a claim that the matter has acquired distinctiveness under §2(f) as applied to the applicant's goods or services does not overcome the refusal. It would be logically inconsistent to find otherwise. *See, e.g., TrafFix Devices, Inc. v. Marketing Displays, Inc.,* 532 U.S. 23, 58 USPQ2d 1001, 1007 (2001) ("Functionality having been established, whether MDI'S dual spring design has acquired secondary meaning need not be considered."); *In re R.M. Smith, Inc.,* 734 F.2d 1482, 1484-85, 222 USPQ 1, 3 (Fed. Cir. 1984) ("Evidence of distinctiveness is of no avail to counter a de jure functionality rejection."); *In re Tilcon Warren, Inc.,* 221 USPQ 86, 88 (TTAB 1984) ("Long use of a slogan which is not a trademark and would not be so perceived does not, of course, transform the slogan into a trademark."); *In re Mancino,* 219 USPQ 1047, 1048 (TTAB 1983) ("Since the refusal ... was based on applicant's failure to demonstrate technical service mark use, the claim of distinctiveness under Section 2(f) was of no relevance to the issue in the case.").

As discussed above, evidence of acquired distinctiveness will not alter the determination that matter is unregistrable. Nevertheless, the evidence submitted by the applicant should be reviewed to determine whether it has any bearing on the underlying basis of refusal.

*See also In re Wakefern Food Corp.,* 222 USPQ 76, 79 (TTAB 1984) (the Board, while finding applicant's evidence relating to public perception of WHY PAY MORE! entitled to relatively little weight, noting that the evidence is relevant to the issue of whether the slogan functions as a mark for applicant's supermarket services).

### 1212.03    Evidence of Distinctiveness Under §2(f)

*37 C.F.R. §2.41. Proof of distinctiveness under section 2(f).*

*(a) When registration is sought of a mark which would be unregistrable by reason of section 2(e) of the Act but which is said by applicant to have become distinctive in commerce of the goods or services set forth in the application, applicant may, in support of registrability, submit with the application, or in response to a request for evidence or to a refusal to register, affidavits, or declarations in accordance with §2.20, depositions, or other appropriate evidence showing duration, extent and nature of use in commerce and advertising expenditures in connection therewith (identifying*

## SUBSTANTIVE EXAMINATION OF APPLICATIONS

*types of media and attaching typical advertisements), and affidavits, or declarations in accordance with §2.20, letters or statements from the trade or public, or both, or other appropriate evidence tending to show that the mark distinguishes such goods.*

*(b) In appropriate cases, ownership of one or more prior registrations on the Principal Register or under the Act of 1905 of the same mark may be accepted as prima facie evidence of distinctiveness. Also, if the mark is said to have become distinctive of applicant's goods by reason of substantially exclusive and continuous use in commerce thereof by applicant for the five years before the date on which the claim of distinctiveness is made, a showing by way of statements which are verified or which include declarations in accordance with §2.20, in the application may, in appropriate cases, be accepted as prima facie evidence of distinctiveness. In each of these situations, however, further evidence may be required.*

"To establish secondary meaning, a manufacturer must show that, in the minds of the public, the primary significance of a product feature or term is to identify the source of the product rather than the product itself." *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.,* 456 U.S. 844, 851 n. 11, 214 USPQ 1, 4 n. 11 (1982).

### 1212.04    Prior Registrations as Proof of Distinctiveness

Trademark Rule 2.41(b), 37 C.F.R. §2.41(b), provides that the examining attorney may accept, as *prima facie* evidence of acquired distinctiveness, ownership by the applicant of one or more prior registrations of the same mark on the Principal Register or under the Act of 1905. *See* TMEP §1212.04(b) as to what constitutes the "same mark," and TMEP §§1212.09 *et seq.* concerning §1(b) applications.

The rule states that ownership of existing registrations to establish acquired distinctiveness "may" be considered acceptable in "appropriate cases," and that the Office may, at its option, require additional evidence of distinctiveness. *In re Dial-A-Mattress Operating Corp.,* 240 F.3d 1341, 57 USPQ2d 1807 (Fed. Cir. 2001); *In re Loew's Theatres, Inc.,* 769 F.2d 764, 226 USPQ 865 (Fed. Cir. 1985).

The following are general guidelines regarding claiming ownership of prior registrations as a method of establishing acquired distinctiveness.

### 1212.04(a)    Sufficiency of Claim vis-à-vis Nature of the Mark

The examining attorney has the discretion to determine whether the nature of the mark sought to be registered is such that a claim of ownership of a prior registration for the same or similar goods or services is enough to establish acquired distinctiveness. For example, if the mark sought to be registered is deemed to be highly descriptive or misdescriptive of the goods or services named in the application, the examining attorney may require additional evidence of acquired distinctiveness. *See In re Loew's Theatres, Inc.,* 769 F.2d 764, 226 USPQ 865 (Fed. Cir. 1985) (claim of ownership of a prior registration held insufficient to establish acquired distinctiveness where registration was refused as primarily geographically deceptively

J

### SUBSTANTIVE EXAMINATION OF APPLICATIONS

term is being used, the commercial impression created by such use, and what the use would mean to purchasers. *In re Redken Laboratories, Inc.*, 170 USPQ 526, 529 (TTAB 1971) (evidence adduced by applicant pursuant to §2(f) held insufficient to establish acquired distinctiveness of THE SCIENTIFIC APPROACH, for lectures concerning hair and skin treatment, notwithstanding ten years of use, over $500,000 in promotion and sponsorship expenses, and the staging of over 300 shows per year). *See also In re E.I. Kane, Inc.*, 221 USPQ 1203, 1206 (TTAB 1984) (refusal to register OFFICE MOVERS, INC., for moving services, affirmed notwithstanding §2(f) claim based on, *inter alia*, evidence of substantial advertising expenditures. "There is no evidence that any of the advertising activity was directed to creating secondary meaning in applicant's highly descriptive trade name."); *In re Kwik Lok Corp.*, 217 USPQ 1245 (TTAB 1983) (evidence held insufficient to establish acquired distinctiveness for configuration of bag closures made of plastic, notwithstanding applicant's statement that advertising of the closures involved several hundred thousands of dollars, where there was no evidence that the advertising had any impact on purchasers in perceiving the configuration as a mark). *Cf. In re Haggar Co.*, 217 USPQ 81, 84 (TTAB 1982) (background design of a black swatch held registrable pursuant to §2(f) for clothing where applicant had submitted, *inter alia*, evidence of "very substantial advertising and sales," the Board finding the design to be, "because of its serrated left edge, something more than a common geometric shape or design").

If the applicant prefers not to specify the extent of its expenditures in promoting and advertising goods and services under the mark because this information is confidential, the applicant may indicate the types of media through which the goods and services have been advertised (*e.g.*, national television) and how frequently the advertisements have appeared.

#### 1212.06(c)    Affidavits or Declarations Asserting Recognition of Mark as Source Indicator

Affidavits or declarations that assert recognition of the mark as a source indicator are relevant in establishing acquired distinctiveness. The value of the affidavits or declarations depends on the statements made and the identity of the affiant or declarant. *In re Chemical Dynamics Inc.*, 839 F.2d 1569, 5 USPQ2d 1828 (Fed. Cir. 1988) (conclusory declaration from applicant's vice-president held insufficient without the factual basis for the declarant's belief that the design had become distinctive). Proof of distinctiveness requires more than proof of the existence of a relatively small number of people who associate a mark with the applicant. *In re The Paint Products Co.*, 8 USPQ2d 1863, 1866 (TTAB 1988) ("Because these affidavits were sought and collected by applicant from ten customers who have dealt with applicant for many years, the evidence is not altogether persuasive on the issue of how the average customer for paints perceives the words 'PAINT PRODUCTS CO.' in conjunction with paints and coatings."). *See also In re Gray Inc.*, 3 USPQ2d 1558, 1560 (TTAB 1987) (affidavit of applicant's counsel expressing his belief that the mark has acquired secondary meaning accorded "no probative value whatsoever"

TRADEMARK MANUAL OF EXAMINING PROCEDURE

because, among other reasons, the statement is subject to bias); *In re Petersen Mfg. Co.*, 2 USPQ2d 2032 (TTAB 1987) (declarations from customers which stated that designs used by applicant indicate to the declarant that the applicant is the source of the goods, but which did not refer to or identify the designs with any specificity, not considered persuasive); *In re Bose Corp.*, 216 USPQ 1001, 1005 (TTAB 1983), *aff'd*, 772 F.2d 866, 227 USPQ 1 (Fed. Cir. 1985) (retailer's statement that he has been in contact with many purchasers of loudspeaker systems of whom a substantial number would recognize depicted design as originating with applicant deemed competent evidence of secondary meaning); *In re Flex-O-Glass, Inc.*, 194 USPQ 203, 206 (TTAB 1977) ("[T]he fact that the affidavits may be similar in format and expression is of no particular significance ... since the affiants have sworn to the statements contained therein.").

**1212.06(d)    Survey Evidence, Market Research and Consumer Reaction Studies**

Survey evidence, market research and consumer reaction studies are relevant in establishing acquired distinctiveness and secondary meaning. *Yankee Candle Co., Inc. v. Bridgewater Candle Co., LLC*, 259 F.3d 25, 37, 59 USPQ2d 1720, 1730 (1st Cir. 2001) ("Although survey evidence is not required, 'it is a valuable method of showing secondary meaning,'" citing *I.P. Lund Trading ApS v. Kohler Co.*, 163 F.3d 27, 41, 49 USPQ2d 1225, 1235 (1st Cir. 1998)).

To show secondary meaning, the survey must show that the public views the proposed mark as an indication of the source of the product or service. *Boston Beer Co. L.P. v. Slesar Bros. Brewing Co., Inc.*, 9 F.3d 175, 28 USPQ2d 1778 (1st Cir. 1993) (survey found insufficient to establish acquired distinctiveness where survey demonstrates product-place association rather than product-source association). The applicant must document the procedural and statistical accuracy of this type of evidence and carefully frame the questions contained therein. *See In re E.I. Kane, Inc.*, 221 USPQ 1203, 1206 (TTAB 1984) ("[T]he survey asked the wrong question. The issue is not whether the term 'Office Movers' identifies a specific company. Rather, it is whether the term 'OFFICE MOVERS, INC.' identifies services which emanate from a single source."); *General Foods Corp. v. Ralston Purina Co.*, 220 USPQ 990, 994 n.7 (TTAB 1984) ("[W]here ... [reports of market research, consumer reaction studies] have been conducted for marketing reasons rather than directly to assist in resolving the issues in proceedings before us, their value will almost always depend on interpretations of their significance by witnesses or other evidence."); *Specialty Brands, Inc. v. Spiceseas, Inc.*, 220 USPQ 73, 74 n.4 (TTAB 1983) (testimony concerning survey results, unsupported by documentation, considered unreliable hearsay).



## UNITED STATES PATENT AND TRADEMARK OFFICE

| | PAPER NO. |
|---|---|
| **SERIAL NO.** **APPLICANT**<br>78/078312 Hearts on Fire Company | |
| **MARK**<br>THE WORLD'S MOST PERFECTLY CUT DIAMOND | **ADDRESS:**<br>**Commissioner for Trademarks**<br>**2900 Crystal Drive**<br>**Arlington, VA 22202-3513**<br>**www.uspto.gov** |

| | | |
|---|---|---|
| **ADDRESS**<br>GAILYC C SONIA<br>HUTCHINS WHEELER & DITTMAR<br>101 FEDERAL ST<br>BOSTON MA 02110-1804 | **ACTION NO.**<br>03 | |
| | **MAILING DATE**<br>09/19/02 | If no fees are enclosed, the address should include the words "Box Responses - No Fee." |
| | **REF. NO.** | Please provide in all correspondence: |
| **FORM PTO-1525 (5-90)**   **U.S. DEPT. OF COMM. & TM OFFICE** | HOF TM-0003 | 1. Filing Date, serial number, mark and Applicant's name.<br>2. Mailing date of this action.<br>3. Examining Attorney's name and Law Office number.<br>4. Your telephone number and ZIP code. |
| TRADEMARK LAW OFFICE 11<br>Serial Number: 78/078312<br>Mark: THE WORLD'S MOST PERFECTLY CUT DIAMOND<br>**Please Place on Upper Right Corner**<br>**of Response to Office Action ONLY **| | **TELEPHONE NUMBER** |

| | | | | |
|---|---|---|---|---|
| | Gileen M. Bresso | Gailyc Sonia | | |
| **X** | **TELEPHONE CALL** | **INTERVIEW DATE** | **X** | **ATTORNEY** |
| | **PERSONAL INTERVIEW** | September 18, 2002 | | **APPLICANT** |

**CALL RECORD/NOTES**

OFFICE SEARCH: The examining attorney has searched the Office records and has found no similar registered or pending mark which would bar registration under Trademark Act Section 2(d), 15 U.S.C. Section 1052(d). TMEP section 704.02.
RE: Serial Number 78/078312

In accordance with the authorization granted by the above Applicant or attorney, the application has been AMENDED as indicated below. Any future amendments to the identification of goods or services must be in accordance with 37 C.F.R. 2.71(a); TMEP section 1402.07(e). Please advise the undersigned if there is an objection to the amendment.

### Registration Under Section 2(f)

The registration on the Supplemental Register is hereby withdrawn. The applicant amends to the Principal Register Under Section 2(f). Declaration of of Acquired Distinctiveness is of record in its response dated 3/25/02.

### Disclaimer

No claim is made to the exclusive right to use "CUT DIAMOND" apart from the mark as shown.

Gileen M. Bresso
Trademark Attorney
Law Office 111
703-308-9111 ext. 260

Docketed ☎
**RECEIVED**

SEP 2 1 2002

G...... C. SONIA

## UNITED STATES PATENT AND TRADEMARK OFFICE

| | | PAPER NO. |
|---|---|---|
| **SERIAL NO.** 78/078313 | **APPLICANT** Hearts on Fire Company | |

| | | **ADDRESS:** Commissioner for Trademarks 2900 Crystal Drive Arlington, VA 22202-3513 www.uspto.gov |
|---|---|---|
| **MARK** THE MOST PERFECTLY CUT DIAMOND IN THE WORLD | | |
| **ADDRESS** GAILYC C. SONIA HUTCHINS, WHEELER & DITTMAR 101 FEDERAL STREET BOSTON MA 02110-1804 | **ACTION NO.** 03 | If no fees are enclosed, the address should include the words "Box Responses – No Fee." |
| | **MAILING DATE** 09/19/02 | |
| | **REF. NO.** | Please provide in all correspondence: |

| | |
|---|---|
| **FORM PTO-1525 (5-90)**   U.S. DEPT. OF COMM. & TM OFFICE | Please provide in all correspondence: 1. Filing Date, serial number, mark and Applicant's name. 2. Mailing date of this action. amining Attorney's name and .w Office number. 4. ur telephone number and ZIP code. |

TRADEMARK LAW OFFICE 11
Serial Number: 78/078313
Mark: THE MOST PERFECTLY CUT DIAMOND IN THE WO
   **Please Place on Upper Right Corner**
   **of Response to Office Action ONLY **

| | | TELEPHONE NUMBER |
|---|---|---|
| Gmeen M. Bresso | Gailyc Sonia | |
| X  TELEPHONE CALL | INTERVIEW DATE | X  ATTORNEY |
| PERSONAL INTERVIEW | September 18, 2002 | APPLICANT |

### CALL RECORD/NOTES

OFFICE SEARCH: The examining attorney has searched the Office records and has found no similar registered or pending mark which would bar registration under Trademark Act Section 2(d), 15 U.S.C. Section 1052(d). TMEP section 704.02.

RE: Serial Number 78/078313

In accordance with the authorization granted by the above Applicant or attorney, the application has been AMENDED as indicated below. Any future amendments to the identification of goods or services must be in accordance with 37 C.F.R. 2.71(a); TMEP section 1402.07(e). Please advise the undersigned if there is an objection to the amendment.

#### Registration Under Section 2(f)

The registration on the Supplemental Register is hereby withdrawn. The applicant amends to the Principal Register Under Section 2(f). Declaration of of Acquired Distinctiveness is of record in its response dated 3/25/02.

#### Disclaimer

No claim is made to the exclusive right to use "CUT DIAMOND" apart from the mark as shown.

Docketed (RE)
**RECEIVED**
SEP 2 1 2002
GAILYC C. SONIA

78/078313                              -2-

**Specimen**
The examining attorney hereby withdraws the specimen requirement stating that the specimen is unacceptable.

Gingen M. Bresso
Trademark Attorney
Law Office 111
703-308-9111 ext. 260

DOCKETED
DATE 12-3-02 Published
ACTION DUE
3 mo status cle 3-3-03

Patent and Trademark Office

ASSISTANT COMMISSIONER FOR TRADEMARKS
2900 Crystal Drive
Arlington, Virginia 22202-3513

Nov 13, 2002

NOV 1 8 2002

## NOTICE OF PUBLICATION UNDER 12(a)

1. Serial No.:
   78/078,312

2. Mark:
   THE WORLD'S MOST PERFECTLY CUT DIAMOND

3. International Class(es):
   14

4. Publication Date:
   Dec 3, 2002

5. Applicant:
   Hearts on Fire Company

The mark of the application identified appears to be entitled to registration. The mark will, in accordance with Section 12(a) of the Trademark Act of 1946, as amended, be published in the Official Gazette on the date indicated above for the purpose of opposition by any person who believes he will be damaged by the registration of the mark. If no opposition is filed within the time specified by Section 13(a) of the Statute or by rules 2.101 or 2.102 of the Trademark Rules, the Commissioner of Patents and Trademarks may issue a certificate of registration.

Copies of the trademark portion of the Official Gazette containing the publication of the mark may be obtained from:

> The Superintendent of Documents
> U.S. Government Printing Office
> PO Box 371954
> Pittsburgh, PA  15250-7954
> Phone: (202)512-1800

By direction of the Commissioner.



UNITED STATES DEPARTMENT OF COMMERCE
Patent and Tra    ark Office  HOF TYM 0005



ASSISTANT COMMISSIONER FOR TRADEMARKS
2900 Crystal Drive
Arlington, Virginia 22202-5513

**DOCKETED**

DATE 11-20 Publese

3 yro **ACTION DUE**

Status ck 2-17-03

Nov 13, 2002

NOV 1 3 2002

## NOTICE OF PUBLICATION UNDER 12(a)

1. Serial No.:
   78/078,313

2. Mark:
   THE MOST PERFECTLY CUT DIAMOND IN THE WO
   Etc.

3. International Class(es):
   14

4. Publication Date:
   Dec 3, 2002

5. Applicant:
   Hearts on Fire Company

The mark of the application identified appears to be entitled to registration. The mark will, in accordance with Section 12(a) of the Trademark Act of 1946, as amended, be published in the Official Gazette on the date indicated above for the purpose of opposition by any person who believes he will be damaged by the registration of the mark. If no opposition is filed within the time specified by Section 13(a) of the Statute or by rules 2.101 or 2.102 of the Trademark Rules, the Commissioner of Patents and Trademarks may issue a certificate of registration.

Copies of the trademark portion of the Official Gazette containing the publication of the mark may be obtained from:

> The Superintendent of Documents
> U.S. Government Printing Office
> PO Box 371954
> Pittsburgh, PA   15250-7954
> Phone: (202)512-1800

By direction of the Commissioner.



DEC 3, 2002

**CLASS 14—(Continued).**

SN 76-421,253. LEISURE ARTS. INC., BIRMINGHAM, AL. FILED 6-17-2002.

## MIDNIGHT PLEASURES JEWELRY

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "JEWELRY", APART FROM THE MARK AS SHOWN. FOR JEWELRY AND COSTUME JEWELRY (U.S. CLS. 2, 27, 28 AND 50).

---

SN 76-432,884. GEMS UNLIMITED, INC., DBA RITZ JEWE-LERS. SAN FRANCISCO, CA. FILED 6-19-2002.

## KHOREN

FOR JEWELRY (U.S. CLS. 2, 27, 28 AND 50).

---

SN 76-435,328. LEISHMAN, JODI, OREM, UT. AND LEISH-MAN, MICHAEL. OREM, UT, FILED 7-29-2002.

## ONCE UPON A CHARM ...

FOR JEWELRY (U.S. CLS. 2, 27, 28 AND 50).
FIRST USE 8-0-2001; IN COMMERCE 8-0-2001.

---

SN 78-078,312. HEARTS ON FIRE COMPANY. BOSTON, MA. FILED S.R. 8-8-2001; AM. P.R. 9-18-2002.

## THE WORLD'S MOST PERFECTLY CUT DIAMOND

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "CUT DIAMOND", APART FROM THE MARK AS SHOWN.
SEC. 2(F).
FOR GEMSTONES, NAMELY CUT DIAMOND (U.S. CLS. 2, 27, 28 AND 50).
FIRST USE 1-1-1997; IN COMMERCE 1-1-1997.

---

SN 78-078,313. HEARTS ON FIRE COMPANY, BOSTON, MA. FILED S.R. 8-8-2001; AM. P.R. 9-18-2002.

## THE MOST PERFECTLY CUT DIAMOND IN THE WORLD

NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "CUT DIAMOND", APART FROM THE MARK AS SHOWN.
SEC. 2(F).
FOR GEMSTONES, NAMELY CUT DIAMOND (U.S. CLS. 2, 27, 28 AND 50).
FIRST USE 1-1-1997; IN COMMERCE 1-1-1997.

---

**CLASS 14—(Continued).**

SN 78-090,001. MAGELLAN WATCH S.A., LE LOCLE. SWITZERLAND, FILED 10-24-2001.



OWNER OF SWITZERLAND REG. NO. 495497, DATED 3-7-2002, EXPIRES 9-10-2011.
THE MARK CONSISTS OF THE TERM "MAGELLAN" WITH THE DESIGN OF TWO COMPASSES FORMING THE LETTER "M".
FOR WATCHES, CHRONOMETERS AND CHRONO-GRAPHS FOR USE AS WATCHES AND PARTS THERE-OF (U.S. CLS. 2, 27, 28 AND 50).

---

SN 78-099,367. MZ BERGER & CO., INC., LONG ISLAND . CITY, NY. FILED 12-20-2001.

## INSPIRE

FOR WATCHES AND CLOCKS (U.S. CLS. 2, 27, 28 AND 50).

---

SN 78-099,370. MZ BERGER & CO., INC., LONG ISLAND CITY, NY. FILED 12-20-2001.

FOR WATCHE
AND 50).

---

SN 78-099,376. MZ
CITY, NY. FILE

N

FOR WATCHE
AND 50).

---

SN 78-116,610. BE
TINA, FILED 3-

## OKUSAI

FOR WATCHES AND JEWELRY (U.S. CLS. 2, 27, 28 AND 50).



## TRADEMARK MANUAL OF EXAMINING PROCEDURE

**1211.02(b)(vi)    Evidence of Fame of a Mark**

Evidence of the fame of a mark (*e.g.*, evidence of consumer recognition of a mark, or expenditures made in promoting or advertising a mark) is not relevant unless registration is sought under §2(f). *In re McDonald's Corp.*, 230 USPQ 304, 307 (TTAB 1986) (MCDONALD'S held primarily merely a surname in spite of strong secondary meaning, with the Board stating that "the word 'primarily' refers to the primary significance of the term, that is, the ordinary meaning of the word, and not to the term's strength as a trademark due to widespread advertising and promotion of the term as a mark to identify goods and/or services.") *See also In re Industrie Pirelli Societa per Azioni*, 9 USPQ2d 1564 (TTAB 1988), *aff'd*, 883 F.2d 1026 (Fed. Cir. 1989); *In re Nelson Souto Major Piquet*, 5 USPQ2d 1367 (TTAB 1987).

**1212    Acquired Distinctiveness or Secondary Meaning**

*15 U.S.C. §1052(f). Except as expressly excluded in subsections (a), (b), (c), (d), (e)(3), and (e)(5) of this section, nothing herein shall prevent the registration of a mark used by the applicant which has become distinctive of the applicant's goods in commerce. The Director may accept as prima facie evidence that the mark has become distinctive, as used on or in connection with the applicant's goods in commerce, proof of substantially exclusive and continuous use thereof as a mark by the applicant in commerce for the five years before the date on which the claim of distinctiveness is made. Nothing in this section shall prevent the registration of a mark which, when used on or in connection with the goods of the applicant, is primarily geographically deceptively misdescriptive of them, and which became distinctive of the applicant's goods in commerce before the date of the enactment of the North American Free Trade Agreement Implementation Act.*

If a proposed mark is not inherently distinctive, it may be registered on the Principal Register only upon proof of acquired distinctiveness, or "secondary meaning," that is, proof that it has become distinctive as applied to the applicant's goods or services in commerce. If the applicant establishes, to the satisfaction of the examining attorney, that the matter in question has acquired distinctiveness as a mark in relation to the named goods or services, then the mark is registrable on the Principal Register under §2(f) of the Trademark Act, 15 U.S.C. §1052(f).

Within the context of the Trademark Act, §2(f) may be described as follows:

> [U]nlike the first five sections of 15 U.S.C. §1052 which define the grounds upon which a trademark registration is to be refused, Section 2(f) serves as an exception to a rejection under the provisions of one of the other sections, Section 2(e) (citation omitted). Section 2(f) permits registration of marks that, despite not qualifying for registration in light of Section 2(e), have nevertheless "become distinctive of the applicant's goods in commerce." Thus, "Section 2(f) is not a provision on which registration can be refused," ... but is a provision under which an

## SUBSTANTIVE EXAMINATION OF APPLICATIONS

applicant has a chance to prove that he is entitled to a federal trademark registration which would otherwise be refused.

*Yamaha Int'l Corp. v. Hoshino Gakki Co. Ltd.*, 840 F.2d 1572, 1580, 6 USPQ2d 1001, 1007 (Fed. Cir. 1988), quoting *In re Capital Formation Counselors, Inc.*, 219 USPQ 916, 917 n.2 (TTAB 1983).

The purpose and significance of secondary meaning may be described as follows:

> A term which is descriptive ... may, through usage by one producer with reference to his product, acquire a special significance so that to the consuming public the word has come to mean that the product is produced by that particular manufacturer. 1 Nims, *Unfair Competition and Trademarks* at §37 (1947). This is what is known as secondary meaning.

> The crux of the secondary meaning doctrine is that the mark comes to identify not only the goods but the source of those goods. To establish secondary meaning, it must be shown that the *primary* significance of the term in the minds of the consuming public is not the product but the producer (citations omitted). This may be an anonymous producer, since consumers often buy goods without knowing the personal identity or actual name of the manufacturer.

*Ralston Purina Co. v. Thomas J. Lipton, Inc.*, 341 F. Supp. 129, 133, 173 USPQ 820, 823 (S.D.N.Y. 1972).

There are three basic types of evidence that may be used to establish acquired distinctiveness under §2(f):

(1) A claim of ownership of one or more prior registrations on the Principal Register of the same mark for goods or services that are the same as or related to those named in the pending application (*see* 37 C.F.R. §2.41(b); TMEP §§1212.04 *et seq.*);

(2) A statement verified by the applicant that the mark has become distinctive of the applicant's goods or services by reason of substantially exclusive and continuous use in commerce by the applicant for the five years before the date when the claim of distinctiveness is made (*see* 37 C.F.R. §2.41(b); TMEP §§1212.05 *et seq.*);

(3) Actual evidence of acquired distinctiveness (*see* 37 C.F.R. §2.41(a); TMEP §§1212.06 *et seq.*).

The applicant may submit one or any combination of these types of evidence, which are discussed below. Depending on the mark and the facts in the record, the examining attorney may determine that a claim of ownership of a prior registration(s) or a claim of five years' substantially exclusive and continuous use in commerce is

### TRADEMARK MANUAL OF EXAMINING PROCEDURE

insufficient to establish a *prima facie* case of acquired distinctiveness. The applicant may then submit actual evidence of acquired distinctiveness.

### 1212.01          General Evidentiary Matters

Whether acquired distinctiveness has been established is a question of fact. *See In re Loew's Theatres, Inc.*, 769 F.2d 764, 769, 226 USPQ 865, 869 (Fed. Cir. 1985), and cases cited therein. The record must contain facts or evidence of acquired distinctiveness.

The burden of proving that a mark has acquired distinctiveness is on the applicant. *See Yamaha Int'l Corp. v. Hoshino Gakki Co. Ltd.*, 840 F.2d 1572, 1578-79, 6 USPQ2d 1001, 1006 (Fed. Cir. 1988); *In re Meyer & Wenthe, Inc.*, 267 F.2d 945, 122 USPQ 372 (C.C.P.A. 1959).

The applicant may present any competent evidence to establish that a mark has acquired distinctiveness. Actual evidence of acquired distinctiveness may be submitted regardless of the length of time the mark has been used. *Ex parte Fox River Paper Corp.*, 99 USPQ 173 (Comm'r Pats. 1953).

The amount and character of evidence required to establish acquired distinctiveness depends on the facts of each case and particularly on the nature of the mark sought to be registered. *See Roux Laboratories, Inc. v. Clairol Inc.*, 427 F.2d 823, 166 USPQ 34 (C.C.P.A. 1970); *In re Hehr Mfg. Co.*, 279 F.2d 526, 126 USPQ 381 (C.C.P.A. 1960); *In re Gammon Reel, Inc.*, 227 USPQ 729 (TTAB 1985).

Typically, more evidence is required where a mark is so highly descriptive that purchasers seeing the matter in relation to the named goods or services would be less likely to believe that it indicates source in any one party. *See, e.g., In re Bongrain International Corp.*, 894 F.2d 1316, 13 USPQ2d 1727 (Fed. Cir. 1990); *In re Seaman & Associates, Inc.*, 1 USPQ2d 1657 (TTAB 1986); *In re Packaging Specialists, Inc.*, 221 USPQ 917 (TTAB 1984).

Facts based on events that occurred subsequent to the filing date of the application may be considered. Whether acquired distinctiveness has been established is determined in view of the facts that exist at the time registrability is being considered. *McCormick & Co., Inc. v. Summers*, 354 F.2d 668, 148 USPQ 272 (C.C.P.A. 1966); *General Foods Corp. v. MGD Partners*, 224 USPQ 479 (TTAB 1984); *Kaiser Aluminum & Chemical Corp. v. American Meter Co.*, 153 USPQ 419 (TTAB 1967); *In re Hoffman House Sauce Co.*, 137 USPQ 486 (TTAB 1963).

### 1212.02          General Procedural Matters

### 1212.02(a)     Situations in which a Claim of Distinctiveness under §2(f) Is Appropriate

A claim of distinctiveness by the applicant under §2(f) is usually made either in response to a statutory refusal to register or in anticipation of such a refusal. A claim



## APPLICATION REQUIREMENTS

*Inc.*, 192 USPQ 157 (TTAB 1976); 37 C.F.R. §2.61(b). If the applicant does not comply with a requirement for information, registration may be refused.

If the applicant does not comply with the examining attorney's request for information, the requirement should be repeated and, if appropriate, made final. *See In re SPX Corp.*, 63 USPQ2d 1592 (TTAB 2002) (registration properly refused where applicant ignores request for information); *In re Page*, 51 USPQ2d 1660 (TTAB 1999) (intent-to-use applicant's failure to comply with requirement for information as to the intended use of the mark constitutes grounds for refusal); *In re Babies Beat Inc.*, 13 USPQ2d 1729, 1731 (TTAB 1990) (registration properly refused where applicant failed to comply with examining attorney's request for copies of patent applications and other patent information).

The examining attorney may request literature, exhibits, and general information concerning circumstances surrounding the mark and, if applicable, its use or intended use. Requests for information that is not public knowledge, but is peculiarly within the knowledge of the applicant or available to the applicant, are particularly appropriate. The examining attorney should explain why the information is needed, if the reason is not obvious.

If the requested information is confidential, or if for a valid reason the applicant does not want to have the information become part of a public record, the applicant should explain those circumstances. Placing confidential information in a file is not required. Sometimes an explanation will suffice, or material may be shown to the examining attorney without formal filing. Usually a way can be found to give the necessary information to the examining attorney without imposing an undue burden on the applicant.

### 815        Supplemental Register, Application Filed on

Sections 23 through 28 of the Trademark Act, 15 U.S.C. §§1091 through 1096, provide for registration on the Supplemental Register. Certain marks that are not eligible for registration on the Principal Register, but are capable of distinguishing an applicant's goods or services, may be registered on the Supplemental Register. Marks registered on the Supplemental Register are excluded from receiving the advantages of certain sections of the Act of 1946. The excluded sections are listed in 15 U.S.C. §1094.

If the applicant seeks registration on the Supplemental Register, the application should state that registration is requested on the Supplemental Register. If no register is specified, the Office will presume that the applicant seeks registration on the Principal Register.

*See* TMEP §§816 *et seq.* regarding amendments to the Supplemental Register.

### 815.01        Marks Eligible for Principal Register Not Registrable on Supplemental Register

A mark that is clearly eligible for the Principal Register may not be registered on the Supplemental Register. An application requesting registration on the Supplemental Register must be amended to the Principal Register, or refused registration if the mark is registrable

on the Principal Register. *Daggett & Ramsdell, Inc. v. I. Posner, Inc.*, 115 USPQ 96 (Comm'r Pats. 1957).

## 815.02    Elements Required

An application requesting registration on the Supplemental Register should state that the applicant requests registration on the Supplemental Register. If no register is specified, the Office will assume that the applicant is requesting registration on the Principal Register.

In an application under §1(a) or §1(b), the mark must be in lawful use in commerce on or in connection with the goods and services before the mark can register. 15 U.S.C. §1091(a). Under 37 C.F.R. §2.47(c), an intent-to-use applicant may not seek registration on the Supplemental Register until the applicant has timely filed either an amendment to allege use under 15 U.S.C. §1051(c) or a statement of use under 15 U.S.C. §1051(d) that meets minimum filing requirements. (*See* 37 C.F.R. §2.76(e) and TMEP §1104.01 regarding the minimum filing requirements for an amendment to allege use, and 37 C.F.R. §2.88(e) and TMEP §1109.01 regarding the minimum filing requirements for a statement of use.) 37 C.F.R. §§2.47(c) and 2.75(b). When the applicant amends to the Supplemental Register after filing an acceptable amendment to allege use or statement of use, the effective filing date of the application is the date on which the applicant filed the amendment to allege use or statement of use. *See* TMEP §§816.02 and 1102.03.

If an applicant submits a §1(b) application requesting registration on the Supplemental Register for which no allegation of use has been filed, the examining attorney must refuse registration under §23 of the Act on the ground that the mark is not in lawful use in commerce. The examining attorney will withdraw the refusal if the applicant submits an acceptable allegation of use. As noted above, the effective filing date of the application will be the date on which the applicant filed the allegation of use. 37 C.F.R. §2.47(c).

If the application is based solely on §44, the applicant may seek registration on the Supplemental Register without alleging lawful use in commerce and without alleging use anywhere in the world. 15 U.S.C. §1126(e); 37 C.F.R. §2.47(b); TMEP §1009. However, the §44 applicant must verify that the applicant has a bona fide intention to use the mark in commerce. 15 U.S.C. §§1126(d) and (e); 37 C.F.R. §§2.34(a)(3)(i) and 2.34(a)(4)(ii).

## 815.03    Examining Attorney Signs File for Issue

Upon approval of the mark for registration, the examining attorney will sign the face of the file in the space marked "Approved for Supplemental Registration" rather than the space for approval for publication. Marks on the Supplemental Register are not published for opposition, but are issued as registered marks on the date that they are printed in the *Official Gazette*.

Applications on the Supplemental Register are not subject to opposition under 15 U.S.C. §1063, but are subject to cancellation under 15 U.S.C. §1064. 15 U.S.C. §1092.





## Trademark Electronic Search System(Tess)

*TESS was last updated on Sat Jan 29 04:29:51 EST 2005*



Please logout when you are done to release system resources allocated for you.

List At: [        ] OR [       ] to record: [          ] **Record 5 out of 529**

**Check Status** *(TARR contains current status, correspondence address and attorney of record for this mark. Use the "Back" button of the Internet Browser to return to TESS)*

# Yorktown Bracelet

| | |
|---|---|
| **Word Mark** | YORKTOWN BRACELET |
| **Goods and Services** | IC 014. US 002 027 028 050. G & S: Jewelry. FIRST USE: 20030701. FIRST USE IN COMMERCE: 20030701 |
| **Standard Characters Claimed** | |
| **Mark Drawing Code** | (4) STANDARD CHARACTER MARK |
| **Serial Number** | 78335521 |
| **Filing Date** | December 3, 2003 |
| **Current Filing Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Supplemental Register Date** | September 24, 2004 |
| **Registration Number** | 2920243 |
| **Registration Date** | January 18, 2005 |
| **Owner** | (REGISTRANT) Viccellio, James Henry III INDIVIDUAL UNITED STATES 114 Ballard Street Yorktown VIRGINIA 23690 |
| **Disclaimer** | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "bracelet" APART FROM THE MARK AS SHOWN |
| **Type of Mark** | TRADEMARK |
| **Register** | **SUPPLEMENTAL** |
| **Live/Dead Indicator** | **LIVE** |



HOME | INDEX | SEARCH | SYSTEM ALERTS | BUSINESS CENTER | NEWS&NOTICES |
CONTACT US | PRIVACY STATEMENT