UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| HEARTS ON FIRE COMPANY, LLC,<br><br>                    Plaintiff,<br><br>    v.<br><br>EIGHTSTAR DIAMOND COMPANY,<br><br>                    Defendant. | CIVIL ACTION NO. 04 12258-JLT |

**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

### I. RELIEF REQUESTED/INTRODUCTION

Defendant, EightStar Diamond Company, Inc. ("EightStar") moves the Court[1] for an order of summary judgment dismissing plaintiff, Hearts On Fire Company, LLC's ("HOF") amended complaint with prejudice. HOF's amended complaint asserts three claims against EightStar: (i) Violation of 15 U.S.C. § 1125(a); (ii) Unfair Competition (pursuant to common law); and (iii) Unfair and Deceptive Acts and Practices (pursuant to Mass. Gen. Laws ch. 93A). See Exhibit 1, HOF's Amended Complaint at ¶¶ 48-70.

The totality of HOF's factual allegations against EightStar are found in HOF's Amended Complaint ¶¶ 21-34, in a section euphemistically entitled "EightStar's Misconduct." Id. This section describes how EightStar promotes its products through a web site and how the

---

[1] Pursuant to Local Rule 7.1, counsel for EightStar certifies that he was conferred with HOF's counsel in an attempt to resolve the issue.

web sites of some jewelry retailers are linked to EightStar's web site. Nothing in these paragraphs describes anything that is actionable except paragraph 28 that states:

> Since that time, on information and belief, retailers for EightStar including Grimball, E.R. Sawyer Jeweler's Corp. ("E.R. Sawyer"), and The Jewelry Source, have engaged in concerted action—instigated and directed by EightStar—to misappropriate the good will HOF has built up in its trademarks.[2] Each of these entities has used identical or nearly identical designations to HOF's trademarks and service marks—all to promote EightStar's merchandise and EightStar's web site.

See Exhibit 1, ¶ 28. Therefore, the gravamen of HOF's complaint, the facts upon which all of HOF's causes of action rely, is that EightStar instigated and directed retailers (such as Grimball, E.R. Saywer, and The Jewelry Source) to use identical or nearly identical designations of HOF's trademarks on their web sites. HOF alleges EightStar has "instigated and directed" this conduct. Attached to this motion are three declarations from the named retailers that categorically deny this alleged fact. In point of fact, HOF's allegations of "misconduct" are false. The entire factual basis of HOF's complaint is without any factual basis and thus should be dismissed.

## II. UNDISPUTED FACTS

HOF is in the business of distributing cut diamonds and jewelry to authorized retailers. See Exhibit 1 at ¶ 2. EightStar is a small business specializing in the sale of diamonds cut

---

[2] The HOF trademarks at issue are (1) "The World's Most Perfectly Cut Diamond" and (2) "The Most Perfectly Cut Diamond in the World." Nothing argued herein should be taken as an admission by EightStar that these "trademarks" are valid. As the Court can see they are generic and descriptive in nature. Professor McCarthy has stated:

> The Trademark Board has taken a strong stand against the registration of self-laudatory common phrases and slogans.

2 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 11.17 (4th ed. 2005). Additionally, HOF claims it has used these marks since January 1, 1997. See Exhibit 1, ¶ 17. Yet, EightStar has an e-mail from an expert in the diamond industry, Mr. Yantzer, to EightStar dated June 22, 1996, in which Mr. Yantzer states that EightStar's diamonds "are the most perfectly cut diamonds on the planet." See Exhibit 2. Hence, assuming for the moment HOF survives this motion for summary judgment, its "trademarks" have substantial validity problems.

according to EightStar's proprietary, patented method, yielding EightStar's "signature cut" that EightStar claims produces the most brilliant diamonds in the world.  See Exhibit 3, Affidavit of Dana von Sternberg ("Aff. of von Sternberg"), ¶ 3, submitted earlier in support of EightStar's motion to change venue.[3]

HOF alleges that EightStar Retailers have used the HOF Marks ("The most perfectly cut diamonds in the world" and "the word's most perfectly cut diamond") on their web sites to promote EightStar merchandise and as links on the Internet to encourage Internet users to visit EightStar's web site.  Id. at ¶ 29.  HOF filed lawsuits against E.R. Sawyer and Grimball Jewelers.  Since HOF's allegations, each EightStar Retailer has agreed that it would not use the HOF Marks or anything confusingly similar:

    a.    In June 23, 2004, E.R. Sawyer entered into a consent judgment and permanent injunction prohibiting it from using "the word's most perfectly cut diamond" or any other confusingly similar designation to HOF's trademarks or service marks.  Id. at ¶¶ 30-32.

    b.    On July 27, 2004, The Jewelry Source responded to HOF's written demands by confirming that it had ceased using the phrase "the world's most perfectly cut diamond."  Id. at ¶ 33.

    c.    On October 31, 2005, Grimball Jewelers entered into a Consent Judgment and Permanent Injunction prohibiting it from using "the world's most perfectly cut diamond" or any other confusingly similar designation to HOF's trademarks or service marks.  See Exhibit 4.

Having intimidated these three small customers of EightStar into consent judgments, HOF brought suit against EightStar, alleging:

    (i)    Unfair Competition (pursuant to 15 U.S.C. § 1125(a));

    (ii)    Unfair Competition (pursuant to common law); and

---

[3] This disparity in market power discloses the true purpose of HOF's complaint.  It is a blatant attempt to hamstring and economically harm a small competitor and to intimidate the customers of a competitor.

  (iii) Unfair and Deceptive Acts and Practices (pursuant to Mass. Gen. Laws ch. 93A).  See Amended Complaint at ¶¶ 48-70.

These claims rest on HOF's allegation that EightStar instigated or directed the EightStar Retailers to misappropriate the HOF Marks.  Id. at ¶ 28.  The three retailers named in HOF's amended complaint as having been directed or instigated by EightStar have all signed declarations attesting as follows:

  a. <u>Brenda Newman, Owner of The Jewelry Source</u>:  "At no time did Richard von Sternberg or anyone else connected with EightStar Diamond Company direct me or encourage me to use the phrase "the world's most perfectly cut diamond" or "the most perfectly cut diamond in the world" to promote the EightStar diamond or to direct customers to EightStar Diamond Company's web site.  I did not submit the language used in The Jewelry Source's web site to EightStar Diamond Company for its review or approval."  <u>See</u> Exhibit 5 at ¶ 5.

  b. <u>Berkley Grimball, President of GRS Jewelers, Inc.</u>:  "At no time did Richard von Sternberg or anyone else connected with EightStar Diamond Company direct or encourage Grimball Jewelers to use the phrase "the most perfectly cut diamonds in the world" or any similar phrases in its advertising for the EightStar diamond or in its link to the EightStar Diamond Company web site.  We did not submit the language use in Grimball Jeweler's web site to EightStar Diamond Company for its review or approval."  <u>See</u> Exhibit 6 at ¶ 6.

  b. <u>Doug van Dyke, President of E.R. Sawyer</u>:  "At no time has Richard or Dana von Sternberg or anyone else connected with EightStar ever directed, instigated, or encouraged E.R. Sawyer to use The Most Perfectly Cut Diamond in the World and The World's Most Perfectly Cut Diamond or any confusingly similar designation in its advertising for EightStar diamond or on its link to EightStar's web site."  <u>See</u> Exhibit 7, ¶ 7.

Since all three named retailers have denied the factual predicate to HOF's amended complaint, there are no genuine issues of material fact and EightStar should be granted summary judgment of dismissal.

### III.  ARGUMENT

**A.     The Standard for Summary Judgment.**

Summary judgment may be used to avoid useless, expensive, and time-consuming trials where there is no genuine issue of fact remaining to be tried.  Pure Gold, Inc. v. Syntex (U.S.A.), Inc., 739 F.2d 624, 626 (Fed. Cir. 1984).

Under Fed. R. Civ. P. 56(c) the burden is on the moving party to demonstrate "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Aisenberg v. Hallmark Marketing Corp., 337 F. Supp. 2d 257, 260 (D. Mass. 2004), (*quoting* Fed. R. Civ. P. 56(c)).  "Once the moving party has properly supported its motion for summary judgment, the burden shifts to the non-moving party, who 'may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing there is a genuine issue for trial."'  Barbour v. Dynamics Research Corp., 63 F.3d 32, 37 (1st Cir. 1995) (*quoting* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).  "There must be 'sufficient evidence favoring the non-moving party for a jury to return a verdict for that party.  If the evidence is merely colorable or is not significantly probative, summary judgment may be granted."'  Rogers v. Fair, 902 F.2d 140, 143 (1st Cir. 1990) (*quoting* Anderson, 477 U.S. at 249-50).  A party may not defeat a motion for summary judgment simply by suggesting that there is "some metaphysical doubt as to material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

**B.     HOF's First Cause of Action Pursuant to 15 U.S.C. § 1125 Should Be Dismissed.**

HOF alleges EightStar violated 15 U.S.C. § 1125.  See Exhibit 1, ¶¶ 48-47.  Paragraph 52 alleges:

> Without authorization or the consent of HOF, EightStar, Grimball and EightStar's other retailers (on EightStar's behalf and at EightStar's instigation) have used and continue to use marks confusingly similar to [HOF's].

See Exhibit 1, ¶ 52.  Later, HOF alleges EightStar "by paying, or otherwise encouraging or permitting its retailers to use designations nearly identical to or confusingly similar to HOF's trademarks," committed a violation of 15 U.S.C. § 1125.  See Exhibit 1, ¶ 55.

As the three declarations make abundantly clear, no one from EightStar instigated, directed, nor encouraged any of the retailers to use HOF's marks.  There is likewise no evidence EightStar "paid, encouraged or permitted" these retailers to use HOF's marks, regardless of their validity.

Not only did EightStar not instigate this conduct, it did not know of the conduct until after HOF had taken action.  Richard von Sternberg, of EightStar, testified that he did not know that The Jewelry Source, E.R. Sawyer, or Grimball's were allegedly using HOF's "trademarks."  As to E.R. Sawyer, Mr. von Sternberg testified:

> Q   Do you know whether or not there was a lawsuit filed by Hearts on Fire against E.R. Sawyer for use of Hearts on Fire's trademark before you learned of it [E.R. Sawyer's use of the HOF trademark]
>
> A   …I found out about it after that [the lawsuit] occurred.
>
> \* \* \*
>
> Q   . . . And you had no idea prior to that time that E.R. Sawyer was using the Hearts on Fire trademark to describe EightStar's goods?
>
> A   No, absolutely not. …

See Exhibit 9, von Sternberg Dep., p. 118, ll. 10-21.  As to The Jewelry Source, Mr. von Sternberg testified:

> Q   When were you first aware that The Jewelry Source was using the Hearts on Fire trademarked phrase to promote EightStar's goods?

> A   When she was warned not to do it.
>
> Q   Had no idea about it beforehand?
>
> A   That is correct. I had no idea about it beforehand.

Exhibit 9, von Sternberg Dep., p. 127, ll. 14-20.

> And finally, as to Grimball's, Mr. von Sternberg testified:
>
> Q   And do you know how it is that Mr. Grimball refers to EightStar diamonds as the most perfectly cut diamonds in the world?
>
> A   I can't imagine why he would have done that, no.
>
> Q   . . . You have no idea until – when was it you first learned that Grimball was referring to EightStar diamonds as the most perfectly cut diamond in the world?
>
> A   When he was notified by Hearts on Fire not to do that.

Exhibit 9, von Sternberg Dep., p. 134, ll. 5-15.

In conclusion, the retailers, Grimball's, The Jewelry Source, and E.R. Sawyer, all deny EightStar instigated or directed their alleged misuse of HOF's "trademarks." EightStar has testified that it did not learn of the alleged misuse until after HOF had taken action against the small retail stores. There simply is no evidence EightStar instigated or directed the retailers with respect to the misuse of HOF's "trademarks." EightStar cannot be held liable for the actions of a third party retailer. There is no genuine issue of material fact and HOF's claim under 15 U.S.C. § 1125 should be dismissed.

C. **HOF's Second Cause of Action for Unfair Competition Should be Dismissed.**

HOF also alleges EightStar committed the tort of unfair competition. See Exhibit 1, ¶¶ 58-65. This is indeed ironic since HOF's size dwarfs that of EightStar.[4] Nonetheless, the gravamen of HOF's unfair competition claim against EightStar is contained in paragraph 61, which states:

> Without authorization or consent of HOF, EightStar, Grimball and EightStar's retailers, on EightStar's behalf and instigation, have used and continue to use . . . HOF's trademark.

See Exhibit 1, ¶ 61. As the declarations prove, EightStar has not directed or instigated anything. No genuine issue of material fact exists and HOF's second cause of action should be dismissed as a matter of law.

D. **HOF's Third Cause of Action for Unfair and Deceptive Acts and Practices (Mass. Gen. Laws ch. 93) Should be Dismissed.**

Finally, HOF's third cause of action alleges EightStar has violated Massachusetts Statute ch. 93A, et seq. See Exhibit 1, ¶¶ 66-70. The substance of this claim is found in paragraph 68, which states:

> The foregoing conduct by EightStar and Grimball constitutes unfair or deceptive acts and practices within the meaning of Mass. Laws ch. 93A.

See Exhibit 1, ¶ 68. Of course, the language "foregoing conduct" refers back to the Amended Complaint's description of EightStar's "misconduct" as described in paragraphs 21-34. The attached declarations debunk this allegation and necessitate dismissal.

Additionally, as HOF knew when it brought this spurious claim, 93A claims apply to conduct occurring primarily and substantially in Massachusetts. Yankee Candle Co. v.

---

[4] HOF's answers to interrogatories indicate last year HOF had net sales in excess of $77 million. See Exhibit 8, response to Interrogatory No. 1. EightStar is a one-room operation in Cotati, California, with 2005 revenues of approximately one-seventy seventh (1/77th) of HOF's.

Bridgewater Candle Co., 259 F.3d 25, 47 (1st Cir. 2001). Nothing could be further from the truth in this case. EightStar is a small company out of Cotati, California. Grimball is a jewelry store located in Chapel Hill, North Carolina. E.R. Sawyer Jewelry stores are located in California. The Jewelry Source is located in El Segundo, California. This claim was frivolous and never should have been brought. It should be dismissed.

E.  **The Court Should Deny HOF's Fed. R. Civ. P. 56(f) Argument.**

EightStar anticipates that HOF will respond to this motion by asking this Court to grant it more discovery. The Court should deny this request. HOF brought its complaint in October 2004. The parties participated in rule-mandated disclosure sometime ago and have been free to engage in discovery since. HOF has done nothing except depose the father and son, Richard and Dana von Sternberg, who run EightStar. This matter is a very costly and burdensome lawsuit for a small company like EightStar and the Court should dismiss it forthwith.

IV. **CONCLUSION**

A proposed order is submitted herewith.

DATED this __ day of March, 2006.

MILLER NASH LLP

/s/ James Phillips
James Phillips
Adele Conover
601 Union Street
Seattle, WA 98101-2352
(206) 622-8484

Attorneys for Defendant
EightStar Diamond Company

Admitted *Pro Hac Vice*

## CERTIFICATE OF SERVICE

     I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identifed on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on March 10, 2006.

                                                /s/  James L. Phillips
                                                James L. Phillips