UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

HEARTS ON FIRE COMPANY, LLC,

        Plaintiff,

v.

EIGHTSTAR DIAMOND COMPANY and
GRS JEWELERS, INC.,

        Defendants.

CIVIL ACTION NO. 04 12258-JLT

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Plaintiff Hearts On Fire Company, LLC ("HOF") submits this memorandum in opposition to defendant EightStar Diamond Company, Inc.'s ("EightStar") motion for summary judgment.[1] In its motion, EightStar argues that it is entitled to summary judgment on all counts of HOF's Amended Complaint on the basis of affidavits of three of its authorized retailers who claim that EightStar never encouraged, authorized or directed them to infringe HOF's trademarks. What EightStar utterly fails to acknowledge, however, is the substantial evidence in the record that EightStar did precisely what HOF claims: EightStar engaged in a concerted

---

[1] On March 22, 2006 the Court granted HOF's motion to continue the date for filing this Opposition to March 31, 2006. The basis for HOF's motion was that it had not yet received from EightStar potentially critical video tapes of dealer conferences held by Eightstar. HOF has not yet received the video tapes. While HOF believes that it has provided sufficient evidence in this Opposition for the Court to deny EightStar's motion, if the Court feels that it should see additional evidence, HOF requests that the Court convert this Opposition to a Rule 56(f) response and defer ruling until HOF is able to review the video tapes. See Affidavit of Jessica W. Manchester ("Manchester Aff.") ¶¶ 3-7.

campaign to encourage its retailers to use HOF's trademarks unlawfully to promote EightStar's business.

As set forth below, this evidence includes, *inter alia*, e-mails between EightStar and its retailers, a training manual for EightStar retailers, and multiple unlawful and infringing uses of HOF's trademarks by EightStar retailers. This evidence establishes a pattern of trademark infringement and unlawful competition. Notwithstanding EightStar's protests to the contrary, the record is replete with evidence from which a fact finder could infer that EightStar has been the puppeteer directing the unlawful actions of its retailers. For these reasons, EightStar's Motion for Summary Judgment must be denied.

I. **FACTS**

**Hearts On Fire**

HOF is a Massachusetts Limited Liability Company with a principal place of business in Boston, MA. (See Amended Complaint ¶ 2; EightStar Answer ¶ 2.) HOF was originally founded in 1978 as Di-Star, Ltd. (Affidavit of Glen Rothman ("Rothman Aff.") ¶ 2.) HOF adopted its present name in 1996, when it commenced using the Hearts On Fire® mark in connection with the sale and advertising of diamonds and jewelry. (Id.) HOF is a leader in the distribution of branded diamonds—i.e., diamonds that are identified by source-designating trademarks, which are extensively promoted. (Id. ¶ 3.) HOF's diamonds are cut to display a "hearts and arrows" pattern—that is, a pattern of eight symmetrical hearts, when viewed from the bottom under magnification, and a pattern of eight symmetrical arrows pointing to the outer edge of the diamond, when viewed from the top under magnification. (Id. ¶ 4.) HOF sells to authorized retailers at numerous retail locations throughout the United States.

(Id. ¶ 5.)   HOF promotes its diamonds and jewelry through a web site located at www.heartsonfire.com. (Amended Complaint ¶ 15; EightStar Answer ¶ 15.)

**EightStar**

EightStar is a California corporation that wholesales cut diamonds and jewelry containing cut diamonds and, in particular, wholesales diamonds cut to display the "hearts and arrows" pattern. (See EightStar's Statement of Material Facts ("EightStar Facts") ¶ 1; 30(b)(6) Deposition Testimony of Richard and Dana von Sternberg, 71 ("EightStar Dep.," attached as Exhibit A to Manchester Aff.)  EightStar sells its diamonds and jewelry to retailers that sell to consumers, and also sells its jewelry directly to consumers. (EightStar Dep. (Manchester Aff. Ex. A) at 29-30.)  EightStar promotes its diamonds through its highly interactive web site located at www.eightstar.com. (Amended Complaint ¶ 22; EightStar Answer ¶ 22.)  To attract consumers to its web site, EightStar relies on links provided to that web site from the web site of EightStar's retailers. (EightStar Dep. (Manchester Aff. Ex. A) at 22.)

EightStar and HOF are direct competitors and operate in the same markets. (Rothman Aff. ¶ 6.)  They both cut diamonds to display the "hearts and arrows" pattern, which both companies sell to retailers that sell to consumers at various locations across the United States. (Id.)

**The Hearts On Fire Trademarks**

Since as early as January 1, 1997, HOF has used the marks "The World's Most Perfectly Cut Diamond" and "The Most Perfectly Cut Diamond in the World" in connection with the distribution and the sale of jewelry and diamonds. (Rothman Aff. ¶ 7.)  HOF filed five applications with the United States Patent and Trademark Office ("USPTO") in August 2001 to register the marks "The World's Most Perfectly Cut Diamond" and "The Most Perfectly Cut

Diamond in the World" in connection with certain goods and services. (Rothman Aff. ¶ 8.) The USPTO's examining attorneys approved each of the applications for publication on the Official Gazette in order for the marks to be registered. (Rothman Aff. ¶ 9.) On May 31, 2005, HOF's marks, "The World's Most Perfectly Cut Diamond" and "The Most Perfectly Cut Diamond in the World," were registered in International Registry 14 as numbers 2,956,854 and 2,956,851 respectively. (Rothman Aff. ¶ 10, Ex. A, B.)

**Trademark Dispute**

From as early as December 2002, when HOF's applications to register "The World's Most Perfectly Cut Diamond" and "The Most Perfectly Cut Diamond in the World" were published for registration, Richard von Sternberg, the founder and president of EightStar, has made clear his concern over and disagreement with HOF's right to these trademarks. In January 2003, EightStar and eleven of its authorized retailers filed a request with the Trademark Trial and Appeal Board to extend the date for opposing HOF's marks. (Manchester Aff., Ex. E.) In December 2003, while the HOF marks were still subject to an opposition proceeding, Mr. von Sternberg sent an e-mail to all EightStar retailers reiterating his view that HOF should not be permitted to hold these trademarks. He wrote: "I am not afraid to tell the world that I believe that Hearts on Fire does not deserve to hold such a trademark because it is based entirely on falseness, is puffery, is hypocritical." (Manchester Aff., Ex. F.)

Shortly after Mr. von Sternberg informed EightStar retailers that he did not believe HOF was entitled to hold its trademarks, he sent EightStar retailers an e-mail on February 8, 2004, in which he stated (incorrectly) that as a result of an action filed against HOF by the Jewelers Vigilance Committee, HOF had "no recorded trademarks of the five." (Manchester Aff., Ex. G.)

Mr. von Sternberg's e-mail suggested to EightStar retailers they were free to use HOF's trademarks to promote EightStar diamonds.

Mr. von Sternberg's message to EightStar retailers did not go unheeded. Beginning in the spring of 2004, several EightStar retailers including E.R. Sawyer Jewelers Corp. ("E.R. Sawyer"), the Jewelry Source, and EightStar's co-defendant in this action, GRS Jewelers, Inc. (doing business as "Grimball") began using such designations as "The most perfectly cut diamonds in the world" and "the world's most perfectly cut diamond" to promote EightStar merchandise. The misconduct of these EightStar retailers is set forth below.

**E.R. Sawyer's Infringement**

HOF learned in early April 2004 that EightStar dealer E.R. Sawyer was using HOF's trademark "the world's most perfectly cut diamond" to link customers to EightStar diamond merchandise on its web site. (Rothman Aff. ¶ 11.) After sending E.R. Sawyer a cease and desist letter, HOF commenced an action against E.R. Sawyer in May 2004 to stop E.R. Sawyer from using HOF's marks. (Rothman Aff., ¶ 11 and Ex. C.) Shortly thereafter, E.R. Sawyer entered into a Consent Judgment and Permanent Injunction prohibiting it from using "the world's most perfectly cut diamond" or any other designation confusingly similar to HOF's trademarks or service marks. (EightStar Facts ¶ 4; Rothman Aff. ¶ 12.) The Consent Judgment and Permanent Injunction was entered as an Order of the United States District Court for the Northern District of California on July 7, 2004. (Manchester Aff., Ex. I.)

Notwithstanding Mr. von Sternberg's repeated criticisms to EightStar retailers of the HOF trademarks, Mr. von Sternberg testified that had <u>no idea</u> about E.R. Sawyer's infringing use of HOF's marks until after HOF filed suit. (EightStar Dep. (Manchester Aff., Ex. A) at 118.)

**The Jewelry Source's Infringement**

Within a month after the Consent Judgment and Permanent Injunction was entered in the E.R. Sawyer case, HOF learned that yet another EightStar retailer, The Jewelry Source, was using the phrase "the world's most perfectly cut diamond" on its web site to promote EightStar diamonds. (Rothman Aff. ¶ 12.) The Jewelry Source's web site stated that "[a]t the Jewelry Source, you'll find the world's most perfectly cut diamond: The EightStar (tm)." (Rothman Aff., Ex. D.) On July 22, 2004, HOF sent a letter to The Jewelry Source demanding that it cease and desist from using the phrase "the world's most perfectly cut diamond." (Rothman Aff. ¶ 13 and Ex. D.) On July 27, 2004, The Jewelry Source wrote that that it had ceased using the phrase "the world's most perfectly cut diamond." (Rothman Aff. ¶ 14 and Ex. E.)

Mr. von Sternberg testified yet again that he had no knowledge of The Jewelry Source's infringing use of HOF's marks to promote EightStar merchandise until after HOF filed suit. (EightStar Dep. (Manchester Aff. Ex. A) at 134.)

**Grimball's Infringement**

Four months after HOF resolved The Jewelry Source's infringing use of HOF's marks and five months after the preliminary injunction was entered in the E.R. Sawyer case, HOF learned that a third EightStar retailer, Grimball, was infringing upon HOF's marks, and publishing on its web site the designation "The most perfectly cut diamonds in the world" to describe EightStar's diamonds. (Rothman Aff. ¶ 15.) Grimball's web site contained a link entitled "EightStar Diamonds" with this phrase displayed below that link: "The most perfectly cut diamonds in the world. Only 2000 are cut each year." (Id. ¶ 16.) Grimball's web site also contained a link entitled "Links." (Id.) Upon choosing that link, customers were directed to a page on Grimball's web site with the EightStar company logo, a link to the "EightStar

Diamonds" web site, and the following phrase: "The most perfectly cut diamonds in the world. Only 2000 are cut each year." (Id.) Customers choosing the link to "EightStar Diamonds" were immediately directed to EightStar's website. (Id.)

On October 14, 2004, HOF sent a letter to Grimball demanding that it cease and desist from its use of the designation "the most perfectly cut diamonds in the world" and that Grimball confirm in writing by October 21, 2004 that Grimball would comply with HOF's demands. (Rothman Aff., Ex. F.) Shortly thereafter, HOF filed this action against EightStar on October 26, 2004. (Rothman Aff. ¶ 18.) Although Grimball removed the reference to "the most perfectly cut diamonds in the world" on one of its web sites, it did not remove the infringing material from another web page, at www.grimballjewelers.com/links.html. (Id.) Despite Grimball's subsequent representation that it would remove the infringing material, Grimball did not and in December 2004, HOF amended the complaint to add Grimball. (Id. ¶ 19.)

Mr. von Sternberg testified at his 30(b)(6) deposition that, again, he had no knowledge of Grimball's infringing use of HOF's marks until after HOF filed suit.

| Mr. Sherman: | And do you know how it is that Mr. Grimball refers to EightStar diamonds as the most perfectly cut diamonds in the world? |
| --- | --- |
| Mr. von Sternberg: | I can't imagine why he would have done that, no. |
| Mr. Sherman: | …You have no idea—until when was it you first learned that Grimball was referring to EightStar diamonds as the most perfectly cut diamond in the world? |
| Mr. von Sternberg: | When he was notified by Hearts on Fire not to do that. |

(EightStar Dep. (Manchester Aff. Ex. A) at 134.)

**Comparison Ad**

During discovery in this action, HOF obtained evidence that further supports its case that EightStar encouraged and directed its retailers to promote EightStar goods in ways that infringed upon HOF's trademarks.

For example, on March 22, 2003, Mr. von Sternberg sent EightStar retailers an e-mail attaching an advertisement comparing a HOF diamond with an EightStar diamond. The ad showed a HOF diamond with the caption "The World's Most Perfectly Cut Diamond" above it. (Id. at 2.) The ad did not indicate that "The World's Most Perfectly Cut Diamond" is a trademark of HOF. (Id.) Von Sternberg encouraged EightStar retailers to show the ad "in your store only to potential customers." (Manchester Aff., Ex. H.)[2]

Not only did Mr. von Sternberg directly encourage EightStar retailers to show their customers an infringing ad, but he also expressed his belief that HOF is not entitled to use its trademarks to describe HOF diamonds. Von Sternberg told EightStar retailers that he is "still appalled every time [he] think[s] of this company [HOF] claiming to be the world's most perfectly cut diamond." Id. (emphasis added.)

**Training Manual**

HOF also received in discovery an EightStar training manual that is further proof that EightStar has engaged in a campaign to encourage its retailers to infringe upon HOF's trademarks. EightStar and Brad Huisken, a consultant EightStar hired to train its retailers, created a training manual entitled "The PMSA Relationship Selling Program: An Overview &

---

[2] Dana von Sternberg, EightStar's vice president, testified that EightStar made another version of this comparison ad after EightStar's counsel had reviewed the ad approximately three months after retailers were sent the original comparison ad. (EightStar Dep. (Manchester Aff. Ex. A) at 161). The second ad noted that "The World's Most Perfectly Cut Diamond" is a trademark. (Manchester Aff., Ex. K.)

Selling EightStar® Diamonds" (the "Training Manual"). (Manchester Aff., Ex. J.) The Training Manual is provided to EightStar retailers and is used to train them to sell EightStar diamonds.[3] (EightStar Dep. (Manchester Aff., Ex. A) at 43, 47.)

The Training Manual includes three separate statements that either infringe upon or are closely derived from HOF's marks without any indication that these are trademarks of HOF and cannot be used to promote EightStar diamonds:

- In the "What is an EightStar® Diamond?" section, the EightStar® diamond is described as "The World's first and only perfectly cut and polished diamond." Ex. I to the Manchester Aff. at E00100 (emphasis added).

- In the "EightStar® Benefits For The Customer" section, the Training Manual states that "the EightStar® diamond is the world's most perfect diamond." Id. at E00115.

- In the "More Benefits of an EightStar® Diamond For the Customer" section, the Training Manual states "[t]he prestige of owning the most perfectly cut diamond." Id. at E00123.

The message from the Training Manual is clear—a retailer can say that an EightStar diamond "is the world's most perfectly cut diamond."

When asked whether he was aware of the infringing uses of HOF's marks in the Training Manual, Mr. von Sternberg testified that he had not read the manual "very carefully." (EightStar Dep. (Manchester Aff. Ex. A) at 54.)

**Kehns & Company Jewelers**

Finally, in September 2005, while this action was pending, HOF learned that yet another EightStar retailer was infringing upon HOF's marks. (Affidavit of Mark R. Robins ("Robins

---

[3] The record also suggests that the Training Manual may have been distributed at annual dealership conferences that EightStar held for its retailers starting in approximately 2000. Richard von Sternberg testified that he did not believe the Training Manual was distributed to EightStar retailers at the annual dealership conferences, but was not certain. (EightStar Dep. (Manchester Aff. Ex. A) at 46-47).

Aff.") ¶ 2.) Mr. von Sternberg testified that at some point in early 2004, the principal of Kehns & Company Jewelers, a Singapore merchant, met with EightStar. (EightStar Dep. (Manchester Aff. Ex. A) at 110.) Sometime after this visit, Kehns & Company became an authorized EightStar retailer. (EightStar Dep. (Manchester Aff. Ex. A) at 109.) Kehns & Company remained an authorized EightStar retailer through approximately December 2005. (EightStar Dep. (Manchester Aff. Ex. A) at 19.)

Kehns & Company advertised EightStar diamonds on the web site of the Raffles hotel where Kehns & Company's retail store was located, starting in at least September 2005. (Robins Aff., Ex. A.) Sometime after becoming an authorized EightStar retailer, Kehns & Company began to infringe upon HOF's mark and use it to promote EightStar diamonds stating that "Kehns & Company is the hallmark of the finest in jewelry. Whether you are in search of a flawless diamond solitaire, an EightStar diamond (considered the world's most perfectly cut diamond)…" (Id. at 7.)

Mr. von Sternberg testified once more that he did not know about Kehns & Company's infringing use of HOF's marks until after HOF filed suit:

| Mr. Sherman: | And so you have no idea how it is that this phrase ["the world's most perfectly cut diamond"] was used by Kehns & Company to describe EightStar diamonds? |
|---|---|
| Mr. von Sternberg: | Yeah, that's right. I have no idea. |

(EightStar Dep. (Manchester Aff. Ex. A) at 21.)

## II. THE RECORD PROVIDES AMPLE SUPPORT OF HOF'S CLAIMS SO AS TO PRECLUDE SUMMARY JUDGMENT.

In considering a motion for summary judgment, courts must view the facts in a light most favorable to the nonmoving party, "indulging all reasonable inferences in that party's favor." Barreto-Rivera v. Medina-Vargas, 168 F.3d 42, 45 (1st Cir. 1999) (citing Maldonado-Denis v.

Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994)). A plaintiff may rely upon circumstantial evidence to prove its case. See Desert Palace, Inc. v. Costa, 539 U.S. 90, 100, 123 S. Ct. 2148, 2154 (2003) ("Circumstantial evidence is not only sufficient, but may also be more certain, satisfying and persuasive than direct evidence.") (quoting Rogers v. Missouri Pacific R. Co., 352 U.S. 500, 508, n. 17, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957); Securities and Exchange Commission v. Sargent, 229 F.3d 68, 75 (1st Cir. 2000) (reversing summary judgment because a fact finder could reasonably infer from circumstantial evidence that defendants had traded stock on basis of nonpublic information); see also Ferrara & DiMercurio, Inc. v. St. Paul Mercury Ins. Co., 169 F.3d 43, 56 (1st Cir. 1999), aff'd, 240 F.3d 1 (1st Cir. 2001) (remarking that reasonable inferences must be drawn in favor of the non-moving party on summary judgment and that "[i]nferences can, of course, properly be drawn from circumstantial evidence").

The First Circuit has stated in the trademark context that "a plaintiff may amass a preponderance of the evidence through direct or circumstantial evidence." Beacon Mutual Ins. Co. v. Onebeacon Ins. Group, 376 F.3d 8, 17 (1st Cir. 2004) (reversing summary judgment where a fact finder could reasonably infer from the evidence that there is actual confusion and a sufficient likelihood of confusion among the marks) (emphasis added). HOF has amassed more than sufficient circumstantial evidence to allow the fact finder to infer that EightStar engaged in acts constituting unfair competition under both 15 U.S.C. § 1125(a) (the "Lanham Act") and the common law by conducting a concerted campaign to encourage its retailers to use HOF's trademarks to promote EightStar's merchandise. See, Inwood Laboratories, Inc. v. Ives Laboratories, Inc., 456 U.S. 844, 854, 102 S.Ct. 2182, 2188 (1982) (citing William R. Warner & Co. v. Eli Lilly & Co., 265 U.S. 526, 530, 44 S.Ct. 615, 617 (1924) (a trademark infringement claim can be based upon one party intentionally inducing another party to infringe a trademark).

From as early as 2002, Mr. von Sternberg, the founder and principal of EightStar, made it clear that he did not believe that HOF could claim exclusive trademark rights to the marks "The World's Most Perfectly Cut Diamond" and "The Most Perfectly Cut Diamond in the World." The record suggests that thereafter EightStar actively encouraged EightStar retailers to usurp the goodwill established by HOF in those marks by using them to promote EightStar diamonds.

EigthStar created a training manual for EightStar retailers which contained three separate statements that either directly infringed upon or were derived from HOF's marks. There was, of course, no indication that these phrases were trademarks of HOF. The Training Manual, which Mr. von Sternberg participated in creating, clearly encouraged retailers to promote EightStar diamonds as "the world's most perfect diamond." Mr. von Sternberg also sent to retailers an ad comparing the HOF diamond to the EightStar diamond which included the infringing phrase "The World's Most Perfectly Cut Diamond" with no indication that it is a trademark of HOF. There is no great inferential leap required to conclude that the manual and Mr. von Sternberg's comparison ad encouraged retailers to promote EightStar diamonds using the phrase "The World's Most Perfectly Cut Diamond." Indeed, in April 2004, HOF learned that an EightStar retailer, E.R. Sawyer, was using the phrase "the world's most perfectly cut diamond" to link customers to EightStar merchandise on its web site. HOF then learned in August 2004 that The Jewelry Source, another EightStar retailer, was also using HOF's marks to promote EightStar diamonds. HOF sent another cease and desist letter and secured The Jewelry Source's agreement to cease using the phrase "the world's most perfectly cut diamond." In October 2004, HOF learned that a third EightStar retailer, Grimball, was using HOF's marks to promote EightStar diamonds. It was at this point, on the heels of discovering the multiple infringing uses of HOF's marks to promote EightStar diamonds, that HOF brought this action. HOF eventually

had to amend its complaint to add Grimball when Grimball failed to take down all infringing uses of HOF's marks from its website. Even after this action was filed, HOF learned that a fourth EightStar retailer, Kehns & Company, was using the phrase "the world's most perfectly cut diamond" to describe EightStar diamonds on its web site.

These facts are more than sufficient for a jury to infer that these infringements were not mere coincidences, but rather one concerted effort orchestrated by EightStar to have its retailers infringe upon HOF's marks.

The record also supports an inference that EightStar violated M.G.L. ch. 93A. There is ample evidence that EightStar's use of HOF's trademarks caused confusion sufficient to find a violation of ch. 93A. See, e.g., Maple Grove Farms of Vermont, Inc. v. Euro-Can Products, Inc., 974 F.Supp. 85, 97 (D. Mass. 1997) (refusing to grant summary judgment on a 93A claim where the court found that a reasonable jury could find that defendants engaged in unfair competition in violation of 15 U.S.C. § 1125(a)); Toomey Co. v. Toomey, 683 F.Supp. 873, 879 (D.Mass. 1988) (the "essential element" of an action under ch. 93A is that "defendant's use of a mark caused confusion among customers as to the source of plaintiff's product").

## CONCLUSION

EightStar's three affidavits from its authorized retailers ignores the ample circumstantial evidence that supports an inference that EightStar did precisely what HOF claims: EightStar engaged in a concerted campaign to encourage, authorize or direct its retailers to unlawfully use HOF's trademarks. For all of the foregoing reasons, HOF asks that the Court deny EightStar's motion for summary judgment.

HEARTS ON FIRE COMPANY, LLC,

By its attorneys,

/s/ Robert P. Sherman
Robert P. Sherman (BBO #548540)
Jessie W. Manchester (BBO #660966)
DLA PIPER RUDNICK GRAY CARY US LLP
33 Arch Street, 26th Floor
Boston, MA 02110
Tel. (617) 406-6000
Fax (617) 406-6001

Dated: March 31, 2006

## CERTIFICATE OF SERVICE

I, Jessica W. Manchester, hereby certify that a true copy of the above-document was electronically filed this 31st day of March 2006.

/s/ Jessica W. Manchester
Jessica W. Manchester